In re STATE ex rel. S. B. McLEAN, SOLICITOR, v. JAMES H. JOHNSON.

(Filed 17 October, 1917.)

**Attorneys at Law—Disbarment—Statutes.**

> An attorney who has had sentence suspended for violating the prohibition law with respect to the sale of vinous liquors, has afterwards been convicted, and appealed, with sentence affirmed, been pardoned by the Governor, and continued the acts of violation, will be disbarred from the practice of the law as one "unfitted to be trusted in the discharge of his profession." Revisal, sec. 211.

APPEAL by defendant from *Connor, J.,* at Fall Term, 1917, of CUMBERLAND.

This proceeding, to disbar the defendant, was in this Court (171 N. C., 799), and the ruling below, that the Superior Court had no jurisdiction, was reversed. It now comes up on appeal by the solicitor from a ruling that the facts found are not sufficient to justify disbarment of defendant.

The court found as facts that the defendant, while holding license to practice law, was convicted by a jury in the Superior Court of Cumberland, at August Term, 1913, of selling wine contrary to law; that at said term there were at least four of these cases in which he pleaded guilty, or was convicted, or entered a plea of *nolo contendere;* that at May Term, 1914, of said court, he was again convicted of selling wine contrary to law, and was fined $500, "with the understanding that the defendant is to sell out his place of business and move from that neighborhood, and that he is not to engage in the manufacture of wine in any place in North Carolina." He was further required to give bond to appear for two years and show that he had not violated the laws of North Carolina. Said judgment was not complied with by the defendant, and he failed to pay the fine imposed. He did not sell out his place of business nor move from the neighborhood, and has failed to appear at the terms of court to show good behavior, as provided in the judgment.

At May Term, 1915, of Cumberland, the defendant was again convicted of selling wine contrary to law, and was sentenced to three months in jail and to be put to work on the public roads. On appeal, the conviction was sustained (*S. v. Johnson,* 170 N. C., 685), but the

defendant received a pardon from the Governor, conditioned on his good behavior. Disregarding the conditions, at August Term, 1916, of Cumberland, he was again convicted of selling wine contrary to law, but he was not sentenced, and prayer for judgment was continued, under a bond to appear from time to time and show good behavior. From refusal to disbar the defendant, the State appealed.

*Attorney General for the State.*
*No counsel for defendant.*

CLARK, C. J. The court found as a fact that as to the several convictions prior to May, 1915, the defendant believed that he had a right to sell, on the ground that the local prohibition law of Cumberland (under which the manufacturer had the right to sell wine made from grapes grown on his own land, in quantities of not more than two gallons) had not been repealed by Revisal, 2061, the State Prohibition Law, which had been ratified on a referendum to the people of the State by a majority of 44,000 votes, and that he had been so advised by an ex-solicitor. This Court has observed, "Ignorance of the law excuses no one, and the vicarious ignorance of counsel has no greater effect." *S. v. Downs,* 116 N. C., 1066; *S. v. McLean,* 121 N. C., 601. As the defendant was a lawyer himself, there was all the less excuse for his basing his disregard of the law upon his ignorance. However, he had the full benefit of this defense, for in all the convictions prior to May, 1915, no sentence whatever had been imposed upon him.

The conviction of May, 1915, was after he had been enlightened, but he procured a pardon from the Governor from that sentence, upon condition of his observing the law thereafter. Notwithstanding the continued and remarkable leniency shown the defendant, he was again convicted, in August, 1916.

When this case was here before (*S. v. Johnson,* 171 N. C., 799), the Court held that Revisal, 211, is still in effect, and that the act of 1907, chap. 941, was merely additional and not a repeal thereof. Revisal, 211, reposes in the courts specific authority to disbar an attorney who has "been convicted, or in open court confessed himself guilty, of some criminal offense showing him to be unfit to be trusted in the discharge of the duties of his profession." The law is an honorable career, and in no profession should the moral tone be higher; in none is the average of ability greater and the confidence reposed by the public more implicit. To a marked extent the government of the country is committed to their care, and almost entirely as to the courts. The defendant, as a lawyer, took an oath to "maintain and support the Constitution and the laws."

In England and in many States of this country there is an "habitual criminals statute," under which persons who have been convicted formerly of the same offense are punished more severely than for a first offense (*Moore v. Missouri,* 159 U. S., 673; 1 McClain Cr. Laws, 528), and this has been held constitutional (*Sturtevant v. Com.,* 158 Mass., 598; *McDonald v. Mass.,* 180 U. S., 311; 12 Cyc., 949). In this State this provision (Revisal, 3249) applies, especially on a second conviction of larceny (Revisal, 3500, 3506; *S. v. Davidson,* 124 N. C., 842), but it has also been held that where one has been convicted oftener than once of violation of law the court is entitled to consider it in the *quantum* of punishment imposed, not to exceed the statutory maximum. *S. v. Wilson,* 121 N. C., 654; *In re Holley,* 154 N. C., 163.

From the number of convictions, the defendant may well be styled a professional "blind tiger." This offense has almost necessarily as adjuncts a continued defiance of the law by secret sales, often through disreputable characters, whom the seller must use, and sales are usually made in questionable places.

It is impossible to conceive that the profession of the ministry or of medicine would tolerate for one moment in their ranks an habitual violator of the laws. When recently a member of the medical profession was convicted of a heinous offense in Charlotte (*S. v. Summers,* 173 N. C., 775), that profession, refusing to shield the offender, asked for his punishment, or at least refrained from joining in the application for his pardon.

It is impossible that the courts, which must rely, to a large extent, upon the legal profession for the maintenance of respect for the administration of justice, should hold worthy of a place in its ranks any one who, in spite of repeated acts of clemency, has continued to violate the law. We cannot believe that a professional "blind tiger," or any habitual criminal, nor one who has been sentenced to the roads for three months for selling liquor unlawfully, and whose sentence was affirmed by this Court on appeal, should occupy a place in the honorable profession to which we belong.

The judge below, after finding the above facts, held that "The criminal offenses of which respondent James H. Johnson has been convicted, or in open court confessed himself guilty, as above set forth, are not such as show him to be unfitted to be trusted in the discharge of the duties of his profession, within the meaning of Revisal, sec. 211," and declined to disbar him. This was a conclusion of law, and is erroneous. Those who aid in the administration of the law, whether as judge or counsel, should have clean hands, be respecters and not violators of the laws. Like Gamaliel, they should be learned in the law, and of an honorable report among all men.

McLEAN *v.* JOHNSON.

In *Ex parte Moore,* 63 N. C., 397, the Court served a rule for contempt, with a view of disbarring 108 members of the bar who had joined in signing an article reflecting on the Court, which was published in the newspapers of the State. The Legislature, in passing the subsequent act, now Revisal, 939-945, restricting the power of the court in cases of contempt committed out of the presence of the court, intended to forbid the disbarring of counsel in such cases as punishment for contempt. It was not intended to restrict the right to disbar in cases calling for disbarment which was not imposed under the power to punish for contempt. There has been some confusion in not distinguishing between disbarment for contempt, which was restricted by the statute, and disbarment on account of the misconduct of counsel in matters affecting his fitness to be a member of the bar. *Ex parte Schenck,* 65 N. C., 353, and *Ex parte Biggs,* 64 N. C., 202, came under the former head, and the rule was discharged because the libel charged did not affect his fitness "to be trusted in the duties of his profession."

In *Kane v. Haywood,* 66 N. C., 1, where the motion was to bisbar because of misconduct as counsel in the misuse of funds coming into his hands, the court, mistakenly, as it seems to us, held that as the defendant could not be disbarred for contempt in not paying the money into court because he was unable to do so, that the act of 1871, restricting the power of the court to disbar for contempt, deprived the court of the power to disbar for the willful and corrupt conduct in appropriating the money of his client. The decision in that case has never been satisfactory to the profession, and "suspicion was not absent," as Cæsar said of Orgetorix, that the court extended the meaning of the act which deprived them of the power to disbar for contempt to a case to which it did not apply. This has been cured by Revisal, 212, which requires the court to disbar any lawyer who shall appropriate property or money of his client.

*In re Applicants for License,* 143 N. C., 1, did not pass upon the point now before us, but simply held that in examining students for license the court was not acting as a judicial body and was restricted to the requirements provided by the statute, which were that the applicants should be found to have a competent knowledge of the law and should furnish a certificate of moral character, signed by two reputable members of the bar; and hence the Court could not go into an investigation of the character of the applicant of its own motion. This was remedied by the provision now in Revisal, 207, that the applicants shall not only satisfy the Court of their competent knowledge of the law, but of their upright character.

*In re Ebbs,* 150 N. C., 44, held, by a divided Court, that counsel convicted of felony in another State could not be disbarred in this State, though it would be otherwise if the conviction had taken place in our

own courts. Revisal, 211a, provides that an attorney at law *must* be disbarred upon conviction of felony or for appropriation of the money of his client. And 211b gives the court power, in its discretion, to disbar an attorney upon being found guilty of conduct in his profession involving willful deceit, or soliciting, directly or indirectly, professional business.

In *S. v. Johnson* (this defendant), 171 N. C., 799, the Court held that the Court was not deprived by the statutes above cited from disbarring a lawyer when his conduct is such as to render him unfit to practice law, and that Revisal, sec. 211a and 211b, did not restrict the authority to disbar in cases coming under Revisal, 211.

This case will be remanded to the court below, with instructions that the decree of disbarment shall be entered upon the records of that court, that it may be known that the law will be enforced against all alike. He who habitually violates the law is "unfit to be trusted in the discharge of the duties of his profession," and is not worthy to sit among those who as officers of the court aid in the administration of justice. The order refusing to disbar the defendant is

Reversed.