**RUDOLPH et al., Commissioners, v. UNITED STATES ex rel. ROCK. \***

(Court of Appeals of District of Columbia. Submitted February 6, 1925. Decided April 6, 1925.)

No. 4248.

1. **District of Columbia ⬉⟿7—Unlawful possession and transportation of intoxicating liquor held crime involving moral turpitude, warranting discontinuance of retired policeman's pension.**

Under Act Sept. 1, 1916, § 12; possession and transportation of intoxicating liquor in violation of Act Cong. Oct. 28, 1919, tit. 2, § 3 (Comp St. Ann. Supp 1923, § 10138½aa), by a retired police officer who is subject to call, is a crime involving moral turpitude, commission of which is ground for discontinuance of pension, regardless of whether crime be a first or subsequent offense.

2. **Mandamus ⬉⟿73(1) — Commissioners' discretionary discontinuance of policeman's pension held not subject to judicial review.**

Action of Commissioners of District of Columbia in discontinuing pension payable to retired police officer on his commission of crime involving moral turpitude, in exercise of their discretion, is not subject to judicial review by mandamus, in absence of abuse of discretion.

Robb, Associate Justice, dissenting.

Appeal from the Supreme Court of the District of Columbia.

Suit by the United States, on the relation of Wilbur H. Rock, for writ of mandamus to be directed against Cuno H. Rudolph and others, Commissioners of the District of Columbia. Decree for plaintiff, and defendants appeal. Reversed and remanded, with directions to dismiss.

F. H. Stephens and R. L. Williams, both of Washington, D. C., for appellants.

W. J. Lambert and R. H. Yeatman, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

VAN ORSDEL, Associate Justice. This appeal is from an order of the Supreme Court of the District of Columbia, directing a writ of mandamus against the commissioners of the District, commanding them to reinstate appellee, plaintiff below, Wilbur H. Rock, on the pension roll of the metropolitan police force of the District of Columbia, and to reinstate his name on the pension roll as of the date when his pension was discontinued.

It appears that plaintiff was retired from the police force on May 31, 1919, and under

*Certiorari denied 46 S. Ct. 20, 69 L. Ed. —.

the provisions of the Act of Congress of September 1, 1916 (39 Stat. L. 718, § 12), he received a pension, as such retired member of the police force, up until March 11, 1924, when the commissioners ordered his pension discontinued, for the reason that plaintiff had been found guilty of a violation of the National Prohibition Law (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.). The discontinuance was based upon a provision of the act of 1916 as follows: "The commissioners of the District of Columbia may, in their discretion, reduce or discontinue the relief granted to any person under the provisions of this act, upon receipt of duly certified information from a court of competent jurisdiction that any person receiving such relief has been convicted in such court of any crime involving moral turpitude."

The record discloses that, before the commissioners discontinued plaintiff's pension, they were in receipt of a certified transcript of the record of proceedings in the District Court of the United States for the District of Maryland, No. 5668, Criminal Docket, in the case of United States v. Wilbur H. Rock. From the transcript it appeared that plaintiff had pleaded guilty to a criminal information for the violation of section 3, title 2, of the Act of Congress of October 28, 1919, known as the National Prohibition Law (Comp. St. Ann. Supp. 1923, § 10138½aa). The information charged him with the unlawful possession and transportation of intoxicating liquors. He was fined by the court $200 and costs, and his automobile was forfeited.

[1] In the court below the case turned entirely on the question of whether or not a first offense violation of the National Prohibition Law, of unlawfully having in possession and transporting intoxicating liquors, is a crime involving moral turpitude. If it is, the power to discontinue plaintiff's pension is committed to the discretion of the commissioners of the District, under the act of 1916, and that discretion could not be controlled by a writ of mandamus.

We are not much concerned with the distinction sought to be made between crimes malum in se and those which are merely malum prohibitum. Many things which were not considered criminal in the past have, with the advancement of civilization, been declared such by statute; and the commission of the offense, if it involves the violation of a rule of public policy and morals, is such an act as may involve moral turpitude. It has been held, for example, that assault and battery, breaches of the peace, forcible en-

try and detainer, trespassing, and sale of intoxicating liquor without a license, are not such offenses as involve moral turpitude. But selling liquor without license, under the former method in which the liquor traffic was regulated, is a very different offense from a violation of the National Prohibition Act. Under former state statutes the sale or traffic in liquor was not regarded as immoral. The object of licensing it was twofold: First, for the raising of revenue; and, second, for confining a lawful business within responsible limitations. The prohibition movement, however, was grounded upon a different principle. It rests upon the theory that the use of intoxicating liquors as a beverage is detrimental to the public welfare and the public morals, and this advance step led to the adoption of the Eighteenth Amendment to the Constitution of the United States and the National Prohibition Act, for its enforcement.

The mere violation of a liquor license regulating, by ordinance or statute, a subject not regarded in itself as immoral, might well be regarded as possessing none of the elements involved in moral turpitude. For example, it would hardly be contended that there is anything inherently evil or immoral in driving an automobile on the street, yet one may be guilty of a crime for driving an automobile without a license. But this, like the selling of liquor without a license, might not be such an offense as to involve moral turpitude in its commission, yet either offense may be committed under circumstances which would impute to the offender moral turpitude. On the other hand, the criminal character of the traffic in intoxicating liquors is very different, under the present law, from that which existed under the license system formerly enforced in the states of the Union. The traffic in intoxicating liquors has, by fundamental law, been denounced as inherently wrong, a social evil, condemned by every standard of private and public morals.

There is no hard and fast rule as to what constitutes moral turpitude. It cannot be measured by the nature or character of the offense, unless, of course, it be an offense, inherently criminal, the very commission of which implies a base and depraved nature. The circumstances attendant upon the commission of the offense usually furnish the best guide. For example, an assault and battery may involve moral turpitude on the part of the assailant in one case and not in another. Intent, malice, knowledge of the gravity of the offense, and the provocation, are all elements to be considered. It may

well be that an unsophisticated person could be caught in the act of transporting liquor, in violation of law, under circumstances which would not justify the court in holding that the act involved moral turpitude; but this rule can hardly be applied to a police officer of many years' experience, sworn to defend and uphold the law.

In the case of Pullman Palace Car Co. v. Central Transportation Co. (C. C.) 65 F. 158, the court, holding that a contract made between the parties in reliance upon a statute believed by both parties to confer authority to make it, and without any intention to injure the public, involved no moral turpitude, said: "A contract to promote public wrong, short of crime, may or may not involve it. If parties intend such wrong, as where they conspire against the public interests, by agreeing to violate the law or some rule of public policy, the act doubtless involves moral turpitude. When no wrong is contemplated, but is unintentionally committed, through error of judgment, it is otherwise. Turpitude is defined by Webster to be 'inherent baseness or vileness of principle, or acting, shameful wickedness.' No unintentional wrong, or improper act innocent in purpose, can involve it. When individuals or corporations enter into contract in excess of authority or violate some rule of law unintentionally, the act does not involve moral wrong, much less turpitude. The subject has been much before the courts, and while loose and misleading expressions appear occasionally, the decisions are all reconcilable with this statement."

This, we think, is a wholesome rule. It declares that a court may be justified in holding that an illegal civil contract may be made under circumstances which would involve moral turpitude on the part of one or both of the parties; the test being: Is the act an intentional conspiracy against the public interest and in violation of a rule of public policy? The present case, however, rests upon a much stronger foundation than that of a civil contract, since the law violated is a law affecting public morals. It is a violation of the social duty which the plaintiff owed, not only to his fellowmen, but to society in general, and where the criminal act involves such an intentional violation of private and social obligation, we think it involves moral turpitude.

At the time plaintiff was convicted of a violation of the Prohibition Law, he was still a member of the police force of the District of Columbia, upon the pay roll of the government, subject, under certain conditions,

to be called into service. The act of 1916 provides that "any retired member of the police department or fire department of the District of Columbia receiving relief under the provisions of this act may in time of flood, riot, conflagration, during extraordinary assemblages, or unusual emergencies, be called by the commissioners of said District into the service of the department from which he was retired with relief for such duty as his disability will permit of him performing, without compensation therefor; and the said commissioners shall have power to enforce compliance with the provisions hereof by withholding the payment of relief."

When plaintiff entered the public service as a policeman, he took a solemn oath to support and defend the Constitution of the United States, and to bear true faith and allegiance to the same. It can hardly be said that a police officer, charged with the maintenance of the public peace, can be either defending the Constitution, or bearing true faith and allegiance thereto, when he is engaged in an open violation of the law. As was said by the court in Young v. Edmunson, 103 Or. 243, 204 P. 619, a disbarment proceeding: "To support is to uphold; to maintain. No bootlegger is a supporter of the Constitution and laws of the United States and of the state of Oregon. An attorney at law takes an oath to support the Constitution and laws of the United States and of this state, and it is made his special duty so to do. He cannot consistently be both attorney at law and bootlegger at one and the same time."

The fact that this was plaintiff's first offense is not controlling. The man who traffics in intoxicating liquors in violation of the Constitution and laws of the United States, whether it be the first or the tenth offense, is an offender against the public peace, dignity, and morality of the United States, and a conviction in a court of competent jurisdiction implies criminal intent.

[2] The commissioners of the District, vested by law with discretion to continue or discontinue plaintiff's pension, have resolved the case against him; and, in the absence of an abuse of that discretion, the court, in this proceeding for a writ of mandamus, is without authority to review the case, as in error, and interfere with the exercise of that discretion.

The judgment is reversed, with costs, and the cause is remanded, with directions to dismiss plaintiff's petition.

Petition for writ of error to remove cause to the Supreme Court of the United States denied April 18, 1925.

ROBB, Associate Justice (dissenting). The importance of the question involved justifies a brief statement of the considerations that impel my mind to a different conclusion from that reached by my associates. The case was heard, as stated by the learned trial justice in deciding it, "on petition for writ of mandamus and answer thereto and to rule to show cause." It is apparent, therefore, that the uncontradicted statements in the petition must be accepted here. So far as material to our present inquiry, they are as follows:

Petitioner, after having served about 15 years as a private in the police department of the District of Columbia, was retired on account of injuries received in the performance of his duties. "On January 2, 1924, while in the city of Baltimore, state of Maryland, on his way to make a visit to some friends in the country, he sustained an accident to the automobile which he was driving, and in the machine was found several bottles of liquor, which did not belong to him, but was being taken along by his friends; that, when the accident occurred, his friends ran away from the machine, and, he having no reason to run away, petitioner remained there and was arrested by the police, and charged with having liquor in the machine which he was driving." He subsequently entered a plea of guilty to the charge of "transporting and illegal possession of whisky" and was fined $200 and costs.

It is not disputed that the prosecution was for a first offense, as stated by the trial justice in his opinion. Under the Act of September 1, 1916 (39 Stat. 720), the commissioners of the District of Columbia "may, in their discretion, reduce or discontinue the relief granted to any person under the provisions of this act upon receipt of duly certified information from a court of competent jurisdiction that any person receiving such relief has been convicted in such court of any crime involving moral turpitude; and the said commissioners may also, in their discretion, reduce or discontinue the relief granted to any person under the provisions of this act when it shall appear to their satisfaction from evidence before them that such person is a habitual drunkard or guilty of lewd or lascivious conduct."

The question, therefore, is whether appellee's conviction was for a "crime involving moral turpitude," within the meaning of the statute. It will be noted that Congress was careful to draw a distinction between certain

crimes and those involving moral turpitude, and, further, that Congress did not declare that even conviction for a crime involving moral turpitude should in all cases work a forfeiture, but lodged discretion in the commissioners in cases of such conviction. Moreover, this discretion is made to depend upon the existence of moral turpitude.

This statute being penal in character, it must be assumed that the words "crime involving moral turpitude" were used in their technical legal sense. What, then, constitutes such a crime? "Crimes have been divided, according to their nature, into crimes mala in se and crimes mala prohibita. The former class comprises those acts which are immoral or wrong in themselves, such as murder, rape, arson, burglary, and larceny, breach of the peace, forgery, and the like, while the latter class comprises those acts to which, in the absence of statute, no moral turpitude attaches, and which are crimes only because they have been prohibited by statute." 16 C. J. 58.

In Gillman v. State, 165 Ala. 135, 51 So. 722, the court said: "Moral turpitude signifies an inherent quality of baseness, vileness [and] depravity." In Baxter v. Mohr, 37 Misc. Rep. 833, 76 N. Y. S. 982, the court defined moral turpitude as "an act of baseness, vileness, or depravity, in the private and social duties which a man owes to his fellow man, or to society in general, contrary to the accepted and customary rule of right and duty between man and man." In Redway v. Gray, 31 Vt. 292, it was said: "The true reason why assaults, breaches of the peace, and violations of the liquor law are not such offenses as' make words charging them actionable is because they do not necessarily and in a legal sense imply moral turpitude."

It was held in United States ex rel. Mylius v. Uhl, 210 F. 860, 127 C. C. A. 422, that a conviction for malicious publication of a defamatory libel, and imprisonment for 12 months, was not a conviction for an offense involving moral turpitude. The court said: "To. illustrate: A statute of the United States (Rev. St. § 2139) makes it a crime to give a glass of whisky to an Indian under the charge of an Indian agent. A conviction under this section would not be proof of moral turpitude, although the evidence at the trial might disclose the fact that the whisky was given for the basest purposes."

See, also, Spring Co. v. Knowlton, 103 U. S. 49, 26 L. Ed. 347, and State v. Horton, 139 N. C. 588, 592, 51 S. E. 945, 1 L. R. A. (N. S.) 991, 111 Am. St. Rep. 818. In the first of these cases the Supreme Court said: "It is to be observed that the making of the illegal contract was malum prohibitum and not malum in se. There is no moral turpitude in such a contract, nor is it of itself fraudulent, however much it may afford facilities for fraud." And in the Horton Case this distinction was thus explained: "An offense malum in se is properly defined as one which is naturally evil as adjudged by the sense of a civilized community, whereas an act malum prohibitum is wrong only because made so by statute."

For many years the government of the United States derived very considerable revenue from the manufacture of intoxicating liquor, which was generally recognized as property. While a different and definite public policy now has been declared, and of course that declaration should be observed by all good citizens, Congress has carefully refrained from denominating any offense under the Volstead Act as anything more than a misdemeanor. While a conviction of conspiring to violate the provisions of this act would present a different question from that before us, the conviction here was for illegal possession and transportation, and appellee's motive, whether good or bad, was unimportant. In other words, had appellee stood trial and established the facts alleged in his petition herein, the result necessarily would have been the same.

This case is analogous to that of Com. v. Matthew Adams, 114 Mass. 323, 19 Am. Rep. 362, where it was held that one who negligently drives over another is not guilty of a criminal assault and battery, although he does so while violating a city ordinance against fast driving. The court said: "It is true that one in the pursuit of an unlawful act may sometimes be punished for another act done without design and by mistake, if the act done was one for which he could have been punished if done willfully. But the act, to be unlawful in this sense, must be an act bad in itself, and done with an evil intent; and the law has always made this distinction: That, if the act the party was doing was merely malum prohibitum, he shall not be punishable for the act arising from misfortune or mistake; but, if malum in se, it is otherwise. 1 Hale, P. C. 39. Foster, C. L. 259. Acts mala in se include, in addition to felonies, all breaches of public order, injuries to person or property, outrages upon public decency or good morals, and breaches of official duty, when done willfully or corruptly. Acts mala prohibita include any matter forbidden or commanded by statute,

but not otherwise wrong. 3 Greenl. Ev. § 1. It is within the last class that the city ordinance of Boston falls, prohibiting driving more than six miles an hour in the streets. Besides, to prove the violation of such an ordinance, it is not necessary to show that it was done willfully or corruptly."

The majority opinion stresses the fact that appellee subscribed to an oath. So do the justices of this court; and yet I am loath to believe that, should one of us violate the statute limiting the speed of vehicles in the streets of this city, and be convicted therefor, he might be subject to impeachment as for conviction of a crime involving moral turpitude.

The offense charged against the appellee being merely malum prohibitum, and Congress having specifically declared it to be nothing more than a mere misdemeanor, and affixed a penalty as for a misdemeanor, I do not think it is for this court to give to the offense a classification inconsistent with that evidently intended by Congress. Had Congress intended a violation of the Volstead Act to be within the class of crimes involving moral turpitude, it would have affixed a penalty commensurate with such intent; but it adopted exactly the opposite course.

I think the judgment should be affirmed.