### In re BARTOS.

(District Court, D. Nebraska, Lincoln Division. June 2, 1926.)

1. **Attorney and client ⊜⟾39—Attorney's manufacture of beer in violation of Prohibition Act held misdemeanor involving moral turpitude, warranting disbarment for three years.**

Attorney's manufacture of 700 quarts of beer, not for sale, in violation of National Prohibition Act, tit. 2, § 6 (Comp. St. Ann. Supp. 1923, § 10138½c), *held* a misdemeanor involving moral turpitude, warranting disbarment from federal District Court for three years.

2. **Attorney and client ⊜⟾39—"Moral turpitude," as ground of disbarment of attorney, means anything done contrary to justice, honesty, principle, or good morals, as an act of baseness, vileness, or depravity in the duties of man to his fellow men or society, contrary to customary rule of right.**

"Moral turpitude," within rule that attorney, convicted of misdemeanor involving moral turpitude, may be disbarred, means anything done contrary to justice, honesty, principle, or good morals, as an act of baseness, vileness, or depravity in private and social duties which man owes to his fellow men and to society in general, contrary to accepted and customary rule of right and duty (citing Words and Phrases, "Moral Turpitude").

3. **Attorney and client ⊜⟾39.**

A concept of moral turpitude, as respects disbarment of attorney, depends on state of public morals, and may vary according to community and times.

In the matter of disbarment proceedings against Frank W. Bartos. Respondent disbarred for three years.

Lester C. Dibble, Asst. U. S. Dist. Atty., and Don W. Stewart, both of Lincoln, Neb., for prosecutor.

Leonard A. Flansburg and Herbert W. Baird, both of Lincoln, Neb., for defendant.

MUNGER, District Judge. An order was heretofore entered in this court, reciting a conviction of the respondent in this court of the offense of the unlawful manufacture of intoxicating liquor, in violation of the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.), and directing the respondent to show cause why he should not be disbarred from practicing as an attorney of this court. A return to the rule was made, and upon a trial of the issues, it appeared from the pleadings and evidence that the respondent is of the age of 48 years, and was admitted to the bar of this court in 1902. An information was filed in this court on November 14, 1925, charging the respondent with several offenses against the National Prohibition Act. On March 15, 1926, the respondent pleaded guilty to the charge made in the first count of the information, and was sentenced to imprisonment in a county jail for a period of 10 days.

The charge made in the first count of the information was the unlawful manufacture on September 23, 1925, of intoxicating liquor, to wit, of 700 quarts of beer fit for beverage purposes, containing more than one-half of 1 per cent. of alcohol by volume; such manufacture having been made without a permit from the Commissioner of Internal Revenue authorizing it to be made. The respondent testified that he had manufactured the liquor in the basement of his residence at Wilber, Neb., intending it for the use of himself and of his family and of guests in his home. He testified, also, that he believed it was the policy of officers of the United States and of the state to confine their efforts to the prosecution of persons known as bootleggers, and not to molest persons making intoxicating liquor for their own use; but the respondent admitted that he knew he was violating the law in manufacturing this product.

[1] Under these circumstances, should an order be made disbarring the respondent from practicing as an attorney of this court? Of the nature of such a proceeding the Supreme Court of the United States has said:

"The proceeding is not for the purpose of punishment, but for the purpose of preserving the courts of justice from the official administration of persons unfit to practice in them. Undoubtedly the power is one that ought always to be exercised with great caution and ought never to be exercised, except in clear cases of misconduct, which affect the standing and character of the party as an attorney. But, when such a case is shown to exist, the courts ought not to hesitate, from sympathy for the individual, to protect themselves from scandal and contempt, and the

public from prejudice, by removing grossly improper persons from participation in the administration of the laws. The power to do this is a rightful one, and, when exercised in proper cases, is no violation of any constitutional provision." Ex parte Wall, 107 U. S. 265, 2 S. Ct. 569, 27 L. Ed. 552.

The same court, in the case of Selling v. Radford, 243 U. S. 46, 37 S. Ct. 377, 61 L. Ed. 585, Ann. Cas. 1917D, 569, referring to the same subject, said:

"While, moreover, it is true that the two conditions, membership of the bar of the court of last resort of a state and fair private and professional character, are prerequisites to admission here, there is a wide difference in the nature and effect of the two requirements. * * * The second exaction, on the contrary, is not ephemeral, and its influence is not exhausted, when the admission based upon it is secured, since the continued possession of a fair private and professional character is essential to the right to be a member of this bar. It follows, therefore, that the personality of the member and these inherent and prerequisite qualifications for membership of this bar are indivisible; that is, inseparable. They must, if they exist, follow the personality of one who is a member of the bar, and hence their loss by wrongful personal and professional conduct, wherever committed, operates everywhere, and must in the nature of things furnish adequate reason in every jurisdiction for taking away the right to continue to be a member of the bar in good standing."

It is well established that an attorney may be disbarred for unprofessional conduct, and because of the loss of good moral character. One method of proof of the loss of the requisite moral character is by means of a conviction for a felony, or for a misdemeanor involving moral turpitude. The respondent was not convicted of a felony, and contends that his offense, while a misdemeanor, was not of such a nature as involves moral turpitude. The unlawful manufacture of intoxicating liquor is made punishable by section 6 of title 2 of the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138½c), and the punishment provided for a first offense is a fine of not over $1,000 or imprisonment not exceeding six months.

[2, 3] "Moral turpitude" is a term that has been the subject of many decisions. It has been defined as anything done contrary to justice, honesty, principle, or good morals, and as an act of baseness, vileness, or depravity in the private and social duties which a man owes to his fellow men, or to society in general, contrary to the accepted and customary rule of right and duty between man and man. 27 Cyc. 912; 36 Corp. Jur. 1194; 2 Thornton on Attorneys, 1269; 5 Words and Phrases, 4580. The concept of moral turpitude depends upon the state of public morals, and may vary according to the community or the times. Rudolph v. United States, 6 F. (2d) 487, 50 App. D. C. 362, 40 A. L. R. 1042; State v. Mason, 29 Or. 18, 43 P. 651, 54 Am. St. Rep. 772; Earley v. Winn, 129 Wis. 291, 109 N. W. 633.

It has been decided in a long line of cases in Texas, Alabama, and Georgia, in applying a rule that the credibility of a witness may be attacked because of his conviction for an offense involving moral turpitude, that the unlawful possession, transportation, sale, or manufacture of intoxicating liquor are not offenses involving moral turpitude. Holmes v. State, 68 Tex. Cr. R. 17, 150 S. W. 926; Hightower v. State, 73 Tex. Cr. R. 258, 165 S. W. 184; Jennings v. State, 82 Tex. Cr. R. 504, 200 S. W. 169; Carter v. State, 100 Tex. Cr. R. 95, 271 S. W. 629; Swope v. State, 4 Ala. App. 83, 58 So. 809; Abrams v. State, 17 Ala. App. 379, 84 So. 862; Lyles v. State, 18 Ala. App. 62, 88 So. 375; Horsley v. State, 19 Ala. App. 263, 96 So. 937; Ex parte Marshall, 207 Ala. 566, 93 So. 471, 25 A. L. R. 338; Wheeler v. State, 4 Ga. App. 325, 61 S. E. 409; Edenfield v. State, 14 Ga. App. 401, 81 S. E. 253. A similar conclusion as to the right to disqualify a witness by a record of conviction was reached in McGovern v. Hays & Smith, 75 Vt. 104, 53 A. 326, and in Fort v. City of Brinkley, 87 Ark. 400, 112 S. W. 1084, in a proceeding to revoke the license of a physician.

A different view is taken by the Supreme Court of Oklahoma, as expressed in Hendrix v. State, 4 Okl. Cr. 611, 113 P. 244, where it is said:

"The illegal sale of intoxicating liquor, wrongfully and deliberately committed, is an immoral, degrading, and degraded act, and is committed only by the lawless and unreliable classes of our population. It is a matter of common notoriety that in nine cases out of ten the 'bootlegger' will not only not hesitate to commit perjury in his own behalf, but also he expects every man to whom he vends his stuff to commit perjury for him, should the occasion arise. The unlawful sale of intoxicating liquor involves moral turpitude, and shows a want of moral character. Therefore, for the purpose of affecting the credibility of a witness, he may be asked and required to answer whether he has been convicted of this offense."

See Crawford v. Ferguson, 5 Okl. Cr. 377, 115 P. 278, 45 L. R. A. (N. S.) 519; Missouri, K. & T. Ry. Co. v. Johnson, 34 Okl. 582, 126 P. 567; Fowler v. State, 8 Okl. Cr. 130, 126 P. 831.

In Rousseau v. Weedin, 284 F. 565, the Circuit Court of Appeals of the Ninth Circuit considered the effect of a conviction as a "jointist" under the laws of Washington upon the right to order his deportation as an alien, and said:

"A 'jointist,' under the statute of Washington (Laws 1917, p. 60, § 11), is one who opens up and conducts a place 'for the unlawful sale of intoxicating liquor,' and the offense is declared to be a felony punishable by imprisonment of not less than one year or more than five years. The only question before this court is whether or not the crime involves moral turpitude. We think that the court below properly ruled that it does. The name of the crime is itself expressive of the degraded nature of the place at which the unlawful sale of intoxicating liquor is carried on. It suggests a resort of ill repute, and we think it may be affirmed that any one who willfully opens a place for conducting a business which is positively forbidden and made punishable by law as a felony is guilty of an offense which involves moral turpitude."

The nature of offenses in violation of the laws against the traffic in intoxicating liquors has been directly before the courts in four reported cases, wherein the offenders were attorneys at law, and the question presented was the right of disbarment because of such offenses. In Underwood v. Commonwealth, 105 S. W. 151, the attorney was disbarred upon a showing that he had been convicted three times, while county attorney, of selling intoxicating liquor in violation of the local option law. The Court of Appeals of Kentucky in the course of the opinion said:

"To be admitted to the bar, a person must not only be learned in the law, but possess a character of honesty, probity, and good demeanor. A certificate of such character, furnished by the county court of his residence, is a prerequisite to the granting of the license. It is the possession of the character described that entitled him to admission to the bar, allowing that he is able to pass the requisite examination touching his learning. The continued possession of character is as essential to maintain his relation as an attorney at law, as it is to have it in the first instance to be admitted. The office is one peculiarly of confidence. Not only do his clients repose trust in his integrity, but as an officer of the court, in the matter of administering justice, his privileges and duties are such as to constantly call for the exercise of fidelity, both to his client and to the state. A lawyer without good character is not only a reproach to his profession, but he brings into public distrust, and is a very menace to, the administration of justice itself. All courts have, as an incident of the power to admit attorneys to their bar, the power to disbar them for such conduct as shows they are not longer worthy of confidence. It is not necessary that the misconduct should be such as would render him liable to criminal prosecution. If it shows that he is unfit to discharge the duties of his office, is unworthy of confidence, even though the conduct is outside of his professional dealings, it is sufficient. If he is not honest, if he is not moral, if he is not of good demeanor, he may be disbarred, and should be. His office is a very badge of respectability, a patent of trustworthiness, derived from his position on the court's roll of counsel. He ought not to be suffered to pass for what he is not. Selling of liquor is not per se immoral. But selling liquor in known violation of law is wrong. It is not good demeanor. One so engaged would not be admitted to the bar, no matter how learned in the law. On the same ground, he ought not to be allowed to remain on the court's roll."

In State v. Johnson, 174 N. C. 345, 93 S. E. 847, L. R. A. 1918A, 1189, an order of disbarment was directed of an attorney who had been convicted of repeated sales of intoxicating liquor. In the opinion it was said:

"Revisal, § 211, reposes in the courts specific authority to disbar an attorney who has 'been convicted, or in open court confessed himself guilty, of some criminal offense showing him to be unfit to be trusted in the discharge of the duties of his profession.' The law is an honorable career, and in no profession should the moral tone be higher; in none is the average of ability greater, and the confidence reposed by the public more implicit. To a marked extent the government of the country is committed to their care, and almost entirely as to the courts. The defendant, as a lawyer, took an oath to 'maintain and support the Constitution and the laws.' * * * It is impossible that the courts, which must rely, to a large extent, upon the legal profession for the maintenance of respect for the administration of justice, should hold worthy of a place in its ranks any one who, in spite of repeated acts of clemency, has continued to violate the law. We cannot believe that a professional 'blind tiger,' or any habitual criminal, nor one who has been sentenced to the 'roads' for three months for sell-

ing liquor unlawfully, and whose sentence was affirmed by this court on appeal, should occupy a place in the honorable profession to which we belong."

In Re Callicotte, 57 Mont. 297, 187 P. 1019, the attorney was disbarred upon a showing that he maintained a place where intoxicating liquors were unlawfully sold. The court said:

"At the time the complaint was filed the Attorney General submitted the record of Callicotte's conviction as above set forth. This is sufficient to establish the charge against him. Therefore, without comment, further than to say that an attorney who is so far unmindful of the obligations of his oath as to be guilty of such conduct is unfit to be a member of the bar, it is ordered and adjudged that the said J. W. Callicotte be removed from his office as attorney and counselor at law, and that his name be stricken from the rolls."

In State v. Edmunson, 103 Or. 243, 204 P. 619, the Supreme Court of Oregon disbarred an attorney upon two grounds, one of which was the violation of the laws relating to intoxicating liquor. The court said:

"The information filed by the Grievance Committee states facts sufficient to show that Leon R. Edmunson has been convicted of a crime involving moral turpitude. 'Moral turpitude is anything done contrary to justice, honesty, principle or good morals.' Words and Phrases, citing In re Disbarment of Coffey, 123 Cal. 522 (56 P. 448, 449). To like effect, see In re Hopkins, 54 Wash. 569 (103 P. 805); 2 Thornton on Attorneys at Law, § 857. The sale of intoxicating liquor, by an attorney at law, contrary to the provisions of the prohibition law, constitutes a crime involving moral turpitude. * * * Under our Code, an attorney is a public officer, who has been admitted, or may hereafter be admitted, as such by the Supreme Court of this state: Section 1076, Or. L. An applicant for admission as an attorney must apply to the Supreme Court, and must show, among other things, that he is a person of good moral character. Section 1077, Or. L. If, upon examination, he be found qualified, an oath shall be administered to him 'to support the Constitution and laws of the United States and of this state.' Section 1080, Or. L. Section 1082, Or. L., prescribes the duty of an attorney. Subdivision 1 of this section requires him 'to support the Constitution and the laws of the United States and of this state.' * * *

"The accusation made by the Grievance Committee of the Lane County Bar Association avers the conviction of the defendant of a number of misdemeanors involving moral turpitude, which likewise constitutes a willful violation of subdivision 1 of section 1082, Or. L. To support is to uphold; to maintain. No bootlegger is a supporter of the Constitution and laws of the United States and of the state of Oregon. An attorney at law takes an oath to support the Constitution and laws of the United States and of this state, and it is made his special duty so to do. He cannot consistently be both attorney at law and bootlegger at one and the same time. It appearing to the court, from the accusation and the proof, that Edmunson's conduct has been such that he would not be admitted to the bar upon application therefor, if it were known that he had been convicted of the numerous misdemeanors charged in the information, it follows that he must be disbarred also by virtue of the provisions of section 1091, Or. L. * * * We find in Edmunson a violator of the law. It is made his duty by statute and by oath to support the Constitution and laws of the United States and of this state. He has not only failed to uphold the laws, but he has knowingly become a lawbreaker. He has offended against the prohibition law by selling intoxicating liquor. He has violated a statute denouncing as a crime the act of willfully and knowingly, with intent to injure and defame, publishing of and concerning another false and scandalous matter. · Such is the character of Edmunson, the man and citizen. The character of every lawyer is molded and controlled by his character as a man."

In Rudolph v. United States, 55 App. D. C. 362, 6 F.(2d) 487, 40 A. L. R. 1042, a similar question arose relating to the conviction in a court of Maryland of a retired police officer of the District of Columbia for the unlawful possession and transportation of intoxicating liquor in violation of the National Prohibition Act. An act of Congress permitted the commissioners of the District of Columbia to reduce or discontinue the pension which had been allowed a retired officer upon the conviction of the officer "of any crime involving moral turpitude." After stating that the question in the case in the trial court was whether the officer had been guilty of an act of moral turpitude, the Court of Appeals of the District of Columbia said:

"We are not much concerned with the distinction sought to be made between crimes malum in se and those which are merely malum prohibitum. Many things which were not considered criminal in the past have, with the advancement of civilization, been declared such by statute; and the commission of the offense, if it involves the violation of a rule

of public policy and morals, is such an act as may involve moral turpitude. It has been held, for example, that assault and battery, breaches of the peace, forcible entry and detainer, trespassing, and sale of intoxicating liquor without a license are not such offenses as involve moral turpitude. But selling liquor without license, under the former method in which the liquor traffic was regulated, is a very different offense from a violation of the National Prohibition Act. Under former state statutes, the sale or traffic in liquor was not regarded as immoral. The object of licensing it was twofold: First, for the raising of revenue; and, second, for confining a lawful business within responsible limitations. The prohibition movement, however, was grounded upon a different principle. It rests upon the theory that the use of intoxicating liquors as a beverage is detrimental to the public welfare and the public morals, and this advance step led to the adoption of the Eighteenth Amendment to the Constitution of the United States and the National Prohibition Act, for its enforcement.

"The mere violation of a liquor license regulating, by ordinance or statute, a subject not regarded in itself as immoral, might well be regarded as possessing none of the elements involved in moral turpitude. For example, it would hardly be contended that there is anything inherently evil or immoral in driving an automobile on the street, yet one may be guilty of a crime for driving an automobile without a license. But this, like the selling of liquor without a license, might not be such an offense as to involve moral turpitude in its commission, yet either offense may be committed under circumstances which would impute to the offender moral turpitude. On the other hand, the criminal character of the traffic in intoxicating liquors is very different, under the present law, from that which existed under the license system formerly enforced in the states of the union. The traffic in intoxicating liquors has, by fundamental law, been denounced as inherently wrong, a social evil, condemned by every standard of private and public morals. There is no hard and fast rule as to what constitutes moral turpitude. It cannot be measured by the nature or character of the offense, unless, of course, it be an offense, inherently criminal, the very commission of which implies a base and depraved nature. The circumstances attendant upon the commission of the offense usually furnish the best guide. For example, an assault and battery may involve moral turpitude on the part of the assailant in one case and not in another. Intent, malice, knowledge of the gravity of the offense, and the provocation, are all elements to be considered. It may well be that an unsophisticated person could be caught in the act of transporting liquor, in violation of law, under circumstances which would not justify the court in holding that the act involved moral turpitude; but this rule can hardly be applied to a police officer of many years' experience, sworn to defend and uphold the law. * * *

"When plaintiff entered the public service as a policeman, he took a solemn oath to support and defend the Constitution of the United States, and to bear true faith and allegiance to the same. It can hardly be said that a police officer, charged with the maintenance of the public peace, can be either defending the Constitution, or bearing true faith and allegiance thereto, when he is engaged in an open violation of the law. As was said by the court in Young v. Edmunson, 103 Or. 243, 204 P. 619, a disbarment proceeding: 'To support is to uphold; to maintain. No bootlegger is a supporter of the Constitution and laws of the United States and of the state of Oregon. An attorney at law takes an oath to support the Constitution and laws of the United States and of this state, and it is made his special duty so to do. He cannot consistently be both attorney at law and bootlegger at one and the same time.' The fact that this was plaintiff's first offense is not controlling. The man who trafficks in intoxicating liquors in violation of the Constitution and laws of the United States, whether it be the first or the tenth offense, is an offender against the public peace, dignity, and morality of the United States, and a conviction in a court of competent jurisdiction implies criminal intent."

Certiorari was denied in this case by the Supreme Court. 46 S. Ct. 20, 70 L. Ed. ——.

Some of the decisions which have been cited deal with offenses of unlawful sales of intoxicating liquor, but the unlawful manufacture and sale of such liquors are equally prohibited by the Constitution of the United States. There cannot be much distinction in morals between the sale of liquor and the manufacture for the purpose of giving it to guests of the maker. The respondent has called attention to the fact that in some of these cases there had been several violations of the statutes, but the moral quality of the act does not depend upon the number of times the offense is committed. While there is an economic policy recognized in the laws against the manufacture and sale of intoxicating liquors, there is also a standard of pub-

lic and private morals which is declared by these laws. In the License Cases, 5 How. 504, 12 L. Ed. 256, upholding the validity of early statutes of some of the New England states relating to intoxicating liquors, one of the grounds for sustaining the statutes mentioned by Chief Justice Taney was the general recognition of the tendency of the traffic to produce idleness, vice, and debauchery. Justice McLean referred to the power of the state over internal matters relating to its moral welfare. Justice Woodbury also referred to the power of the states over commerce in articles connected with the public morals. Justice Grier said the true question involved was the right of the state to protect the sale and consumption of an article believed to be pernicious in its effects, and the cause of disease, pauperism, and crime, and to preserve the public morals. In the later cases of Beer Co. v. Massachusetts, 97 U. S. 25, 24 L. Ed. 989, and Mugler v. Kansas, 123 U. S. 623, 8 S. Ct. 273, 31 L. Ed. 205, the court sustained state laws prohibiting the manufacture of intoxicating liquors, asserting the right to regulate public morals as one of the grounds for its decision.

The weight of authority favors the view that an intentional violation of the National Prohibition Act may be an offense involving moral turpitude. It is not necessary to say that all intentional violations of the act are such offenses, but the deliberate act of unlawfully manufacturing a large quantity of intoxicating liquor for beverage purposes is an act of moral turpitude, when it is done by a leading attorney at the bar, who has had many years of experience in the practice of his profession. It is an act which is not according to good morals, and an act of depravity in the private and social duties which he owes to his fellow man and to society in general, and is contrary to the accepted and customary rule of right and duty between man and man. In this case there is more than the mere commission of a misdemeanor involving moral turpitude. The oath which attorneys take upon admission to the bar of this court obligates them to support the Constitution of the United States and to demean themselves uprightly and according to law. The oath taken upon admission to the state court also obligates the support of the Constitution of the United States and of the state of Nebraska. The Constitution of Nebraska, as well as the Constitution of the United States, forbade the unlawful manufacture of intoxicating liquor at the time the respondent committed his offense, and laws enacted in pursuance of these constitutional provisions made the manufacture illegal and imposed penalties for the violations. It cannot be called good demeanor by an attorney, nor can he be said to be possessed of the requisite good moral character to continue as a practitioner at the bar, when he both deliberately violates the Constitution and laws of the United States and of his state, and disregards the solemn oaths he has taken to support these Constitutions.

An order will be entered, disbarring the respondent from the practice of law at the bar of the United States District Court for a period of three years.