STATE OF NORTH DAKOTA, Respondent, v. JOE MALUSKY, Appellant.

(— A.L.R. —, 230 N. W. 735.)

Opinion filed May 7, 1930.

*Cameron & Helgeson,* for appellant.

` *James Morris,* Attorney General, *Charles Simon,* Assistant Attorney General, *Harold D. Shaft,* Assistant Attorney General, and *John C. Pollock,* State's Attorney, for respondent.

NUESSLE, J. On May 28, 1928, Joe Malusky entered a plea of guilty to a charge of engaging in the liquor traffic as a second offense. He was sentenced to serve a term of one year and six months in the state penitentiary. Thereafter and on the 24th of April, 1929, an information was filed in the district court of Cass county charging that Malusky had, prior to the 28th of May, 1928, been convicted of two other felonies, to wit: grand larceny in the state of Wisconsin and perjury in the state of Minnesota and duly sentenced therefor. Thereafter the district court of Cass county ordered that Malusky be remanded to that court to the end that he might be tried and resentenced under said information. He was accordingly remanded to the district court, appeared to answer to the charge as contained in the later information, waived a trial on the question as to whether he had committed two prior felonies as charged therein, admitting that he had done so, requested that he be permitted to establish the facts with reference to the crime of violating the prohibition law as a second offense for which he had been theretofore sentenced on May 2, 1928, and challenged the jurisdiction of the court to impose any further sentence upon him on account of his previous conviction of felony. The court denied his request, overruled his challenge, and resentenced him to serve a term of four years in the state penitentiary beginning as of date May 28, 1928. Pursuant to such sentence he was again committed to the state penitentiary. Thereafter he perfected the instant appeal.

Chapter 126, Session Laws 1927, under which the judgment and sentence from which the instant appeal is taken was imposed, provides:

"Sec. 1. That if a person commits a felony, within this state, after having been convicted of two felonies, either in this state or any other

state of the United States, the maximum punishment or penalty of imprisonment for such offense shall be twice the maximum sentence now or hereafter prescribed by law for a first conviction of said offense.

"Sec. 2. That if a person commits a felony, within this state, after having been convicted three or more times of felonies, either in this state or any other state of the United States, the maximum punishment or penalty of imprisonment for such offense shall be life imprisonment.

"Sec. 3. If at any time before judgment and sentence, or at any time after judgment and sentence but before such judgment and sentence is fully executed, it shall appear that one convicted of a felony, has been previously convicted of crimes as set forth in sections one, or two of this act, it shall be the duty of the state's attorney of the county in which such conviction was had to file an information with the court wherein such conviction was had accusing such person of such previous convictions, whereupon the court shall cause the said person, whether confined in prison or otherwise, to be brought before it, either in term or in vacation, and shall inform him of the accusations contained in said information by reading the same to him, and of his right to be tried as to the truth thereof according to law, and shall require such person to say whether he has been convicted as charged in said information or not. If he shall say that he has not been convicted as therein charged or refuses to answer, or remains silent, his plea, or the fact of his silence shall be entered of record, and the court shall make an order directing that the truth of the accusations made in said information be submitted to a jury at the then present term of court, if in term time and a jury be in attendance, unless continued for cause, or at the next ensuing term of court when a jury is in attendance. If the jury shall find and determine by evidence beyond a reasonable doubt that the accused has been guilty of one or more convictions as charged in said information, or if the accused acknowledges or confesses in open court, after being duly cautioned as to his rights, that he has been so convicted, the court shall sentence him to the punishment or penalty of imprisonment as in sections one or two provided, and shall vacate any previous judgment and sentence if one has heretofore been entered or imposed.

"Whenever it shall become known to any warden or person in charge of the place of imprisonment wherein such person is confined, or to any

probation, parole, police officer, or other peace officer that any person charged with or convicted of a felony, has been previously convicted within the meaning of sections one or two of this act, it shall be the duty of such person forthwith to report the facts to the state's attorney of the county wherein the charge is pending or the conviction was had.

"Sec. 4. Provided, that the provisions of this Act shall not apply to offenses made felonies by statute not involving moral turpitude."

The fourth section of the act above quoted is that on which the appellant grounds this appeal. His first and chief contention is that the violation of the state prohibitory act, on account of which he was sentenced, though a felony, is not an offense involving moral turpitude.

The term "moral turpitude" is not new. It has been used in the law for centuries. It connotes something which is not clearly and certainly defined. See note in 43 Harvard L. Rev. p. 117. Generally it may be said that moral turpitude is evidenced by an act of baseness, vileness or depravity in the private and social duties which a man owes to his fellow man or to society in general. Drazen v. New Haven Taxicab Co. 95 Conn. 500, 111 Atl. 861; Kurtz v. Farrington, 104 Conn. 257, 48 A.L.R. 259, 132 Atl. 540; Holloway v. Holloway, 126 Ga. 460, 7 L.R.A.(N.S.) 272, 115 Am. St. Rep. 102, 55 S. E. 191, 7 Ann. Cas. 1164; Re Henry, 15 Idaho, 758, 21 L.R.A.(N.S.) 207, 99 Pac. 1054; Ex parte Mason, 29 Or. 23, 54 Am. St. Rep. 772, 43 Pac. 651; Rudolph v. United States, 55 App. D. C. 362, 40 A.L.R. 1042, 6 F. (2d) 487; 41 C. J. 212, and cases cited. Many cases may be found in the books dealing with the meaning of the term and attempting to apply it under varying facts and circumstances. Most of the cases seek to make a distinction between offenses mala prohibita and mala in se, and hold that only offenses mala in se involve moral turpitude. If this be the test it avails us little for the difficulty then is to discern the line between the two. History discloses that all offenses were at some time merely mala prohibita and as civilization advanced and social and moral ideals and standards changed they became one after another mala in se. Moral turpitude "is a term which conforms to and is consonant with the state of public morals; hence it can never remain stationary." Drazen v. New Haven Taxicab Co. 95 Conn. 500, 111 Atl. 861. At one time the wilful killing of another was not considered evil in itself, and this is so among some savage

peoples today. At one time honor was vindicated and guilt and innocence determined by mortal combat between factions or individuals. Even now killing is justified in time of war. Larceny became an offense only as property rights were defined and society sought to benefit itself and protect the individual by penalizing the appropriation of property by those who could not justify such appropriation by the prescribed rules. Sexual crimes became such only as man progressed in civilization. At one time, not so greatly remote, prostitution was not regarded as immoral and in some countries is not even now banned by the law. However much every man may be answerable for his acts to his own conscience, society cannot permit each individual to say for it what is moral and what is immoral. To him who deliberately kills, murder is not immoral. To him who steals, larceny is not immoral. To him who lives only for the gratification of his appetites there is no immorality in doing so. Some standard must exist according to which the determination as to whether act or conduct is moral or immoral is to be made. That standard is public sentiment—the expression of the public conscience. It may be manifest, unwritten, and more or less nebulous, as legend, as tradition, as opinion, as custom, and finally crystallized, written as the law. Thus the standard is fixed by the consensus of opinion, the judgment of the majority. When the majority is slight there is, of course, greater opposition on the part of the minority to the standard. The majority may become the minority and the standard change. But so long as it is established measurement must be made according to its terms. So we must say that those things which are discountenanced and regarded as evil and accordingly forbidden by society, are immoral and that the doing of them contrary to the sentiment of society thus expressed involves moral turpitude, and this regardless of the punishment imposed for their doing. "Moral turpitude implies something immoral in itself regardless of the fact whether it is punishable by law. The doing of the act itself and not its prohibition by law fixes the moral turpitude." Pippin v. State, 197 Ala. 613, 73 So. 340; Ex parte Marshall, 207 Ala. 566, 25 A.L.R. 338, 93 So. 471; Fort v. Brinkley, 87 Ark. 404, 112 S. W. 1084; Coykendall v. Skrmetta (C. C. A. 5th) 22 F. (2d) 120. Nevertheless the fact that the doing of the act is penalized and the character of the

penalty imposed are circumstances to be considered in determining the question of its turpitude.

For more than forty years—since the birth of this state—the traffic in intoxicating liquor, its manufacture and sale for beverage purposes, has been recognized as evil, and as such outlawed. Section 217, Constitution of North Dakota. This section was a declaration of principles on the part of the people of this state. It established the policy of the people of this state with reference to the liquor traffic. It imposed upon the legislature a moral obligation to take appropriate action with respect thereto. State ex rel. Ohlquist v. Swan, 1 N. D. 5, 44 N. W. 492. Pursuant to this provision the first legislature of the state, and thereafter as occasion demanded succeeding legislatures, enacted legislation forbidding and penalizing the manufacture and sale of intoxicating liquor as a beverage. Subsequently the people of the United States by the adoption of the Eighteenth Amendment likewise recognized the traffic in intoxicating liquor as evil and the Congress of the United States forbade it and penalized the violation of the ban. "The adoption of the Eighteenth Amendment and the National Prohibition Act were brought about by a general public sentiment that the liquor traffic should be abolished and made an outlaw, and that the traffic itself was a moral evil . . ." per Kenyon, Circuit Judge, in Bartos v. United States Dist. Ct. (C. C. A. 8th) 19 F. (2d) 722, 728. As was said in Kurtz v. Farrington, 104 Conn. 257, 48 A.L.R. 259, 132 Atl. 540:

"The Constitution of the United States is the supreme law of the land. Not alone jurists, but publicists the country over are in agreement that, as interpreted by our Supreme Court, it has been a mightier influence in maintaining our government, and in helping it to meet the problems it has been confronted with, than any other single influence. Our country and our Constitution are inseparable. The Constitution has held our past; it now holds our present; and, if we keep to its defined course, it will sustain our future. The National Prohibition Law and the state laws passed in aid of the enforcement of the 18th Amendment are vitally necessary to the life and strength of this Amendment. Without them it must fail in its purpose. The violation of these laws is a violation of the Constitution of the United States. If one provision can be violated with impunity, another soon will be. If one

who gives aid to the enemy of his country in time of war is guilty of moral turpitude, how may we distinguish the man who in time of peace, by his deliberate course, helps to destroy the Constitution. It is indeed true that many do not see or feel that the violation of the liquor law is undermining the most vital of all our governmental institutions, the Constitution of the United States. Opinions may differ as to the wisdom of the law, but there can be no such difference as to the duty of the citizen. Courts will not look at violations of that law with easy disregard of the baseness of the act, the unchecked effect of which is fraught with so serious a public evil, and is so destructive of the people's regard for the law of the land. Crimes of this character are not ordinary crimes. They are violations of those duties which every citizen owes to society of which he is a part and the country of which he is a part. Citizens who disregard those high obligations, and are convicted in the courts of their own country or state, are not on a par with loyal citizens. Their offenses involve moral turpitude. . . ."

And while there is some difference among the courts as to whether violations of the prohibition acts, state or national, involve moral turpitude, we think that the weight of authority, as well as the weight of reason favors the view that they do. The following cases and the citations contained therein and in the notes appended thereto, illustrate both views. Kurtz v. Farrington, 104 Conn. 257, 48 A.L.R. 259, 132 Atl. 540; State ex rel. Young v. Edmunson, 103 Or. 243, 204 Pac. 619; Rudolph v. United States, 55 App. D. C. 362, 40 A.L.R. 1042, 6 F. (2d) 487; Bartos v. United States Dist. Ct. (C. C. A. 8th) 19 F. (2d) 722, 728; Re Bartos (D. C.) 13 F. (2d) 138; Booker v. State, — Ala. App. —, 121 So. 3; Ex parte Marshall, 207 Ala. 566, 25 A.L.R. 338, 93 So. 471 (but see Baugh v. State, 215 Ala. 619, 112 So. 157); Fort v. Brinkley, 87 Ark. 404, 112 S. W. 1084; Edenfield v. State, 14 Ga. App. 401, 81 S. E. 253; Jennings v. State, 82 Tex. Crim. Rep. 504, 200 S. W. 169, (but see Green v. State, 107 Tex. Crim. Rep. 473, 300 S. W. 55); McGovern v. Hays, 75 Vt. 104, 53 Atl. 326; Coykendall v. Skrmetta (C. C. A. 5th) 22 F. (2d) 120. Accordingly we hold that a violation of the state prohibition law as of a second offense involves moral turpitude.

It is further urged that the legislature when enacting the fourth

section of chapter 126, supra, must have contemplated that there were felonies made such by statute which did not otherwise involve moral turpitude; that the character of the act and not the penalty imposed for its commission should determine the question of moral turpitude; that unless this were the case the provisions of the fourth section would be meaningless and futile; that there were and are no offenses made felonies by the state statutes which do not involve moral turpitude, unless violations of the prohibitory act are such offenses; that the statute here in question being highly penal in its nature must be strictly construed, and, on this account, if violations of the prohibitory act are held to involve moral turpitude, then, owing to the uncertainty of the legislative intent as to the offenses to which the statute should apply it must be held ineffective and void.

Of course it is our duty in applying the statute to discover the legislative intent. But we are not subject to the common law rule which requires that penal statutes shall be strictly construed. This rule is abrogated by our statute. See § 9201, Comp. Laws 1913; State v. Fargo Bottling Works Co. 19 N. D. 396, 26 L.R.A.(N.S.) 872, 124 N. W. 387. In the last named case, speaking with reference to the construction of penal statutes, we said:

"In our construction of this statute in all its parts, we bear in mind that it is a penal statute; that nothing is to be regarded as included within its provisions that is not within its letter as well as its spirit; and that, if it contains a patent ambiguity and admits of two reasonable and contradictory constructions, that which operates in favor of a party accused under its provisions is to be preferred. Further than this, however, rules of strict construction, especially those of the common law have no application to the statutes of our state. Section 187, Laws 1909, amending as it does § 9366, Rev. Codes 1905, is part of our Penal Code and clearly within the provision that 'the rule of the common law that penal statutes are to be strictly construed has no application to this Code. All its provisions are to be construed according to the fair purport of their terms, with a view to effect its objects and promote justice.' Rev. Codes 1905, § 8538, Comp. Laws 1913, § 9201. Penal statutes, therefore, 'like all others, are to be fairly construed according to the legislative intent as expressed in the enactment, the court refusing on the one hand to extend the punishment to cases

which are not clearly embraced in them, and on the other equally refusing by any mere verbal nicety, or forced consideration or equitable interpretation, to exonerate parties plainly within their scope.' 2 Lewis's, Sutherland, Stat. Constr. 2d ed. § 519. If the meaning of the statute or of some of its parts is simply obscure, the legislative intent in the passage of the act will be considered as a light to assist the court in arriving with more accuracy at its meaning, and a construction which gives some meaning to the statute or an obscure part or clause thereof will be preferred to one which renders it entirely nugatory and meaningless. 'In short,' as well stated by Judge Story, 'it appears to me that the proper course in all of these cases is to search out and follow the true intent of the Legislature, and to adopt that sense of the words which harmonizes best with the context and promotes in the fullest manner the apparent policy and objects of the Legislature.' United States v. Winn, (C. C.) 3 Sumn. 209, Fed. Cas. No. 16,740."

Evidently the legislature when it enacted chapter 126, supra, intended that an offender whose confirmed criminal tendencies were established by his previous convictions of two or more felonies should receive a more severe punishment than one who was a first or second offender. People v. Bergman, 176 App. Div. 318, 162 N. Y. Supp. 443; People v. Caesar, 1 Park. Crim. Rep. 645. The legislature contemplated that this depravity might be established by proof of former convictions, either in this state or in any of the other states, but required, that such proof should be to the satisfaction of the court or jury beyond a reasonable doubt, even as proof of any other element essential to a finding of guilt. Though it made no distinction between convictions in North Dakota and convictions in any other state, it specified that these convictions must be for felonies involving moral turpitude. We must, of course, assume that when the legislature enacted this section it had in mind the definition of felony as contained in our statute. It must have known that the statute is exclusive and that there are no offenses either misdemeanors or felonies which are not defined and made such by the statute. See §§ 9194, et seq., Comp. Laws 1913; Reeves v. Russell, 28 N. D. 265, L.R.A.1915D, 1149, 148 N. W. 654. So the legislature must have contemplated that a felony is an offense which is or may be punishable by imprisonment in the

state penitentiary, and if it is left to the discretion of the judge or jury to determine whether the penalty imposed shall be imprisonment in the state penitentiary, then the offense is to be deemed a misdemeanor for all purposes after a judgment imposing a punishment other than imprisonment in the penitentiary. See § 9197, Comp. Laws 1913. And when the legislature excepted from the operation of the act "offenses made felonies by statute not involving moral turpitude" it must have intended that the character of the offense and·not the penalty imposed for its commission should determine its turpitude. Otherwise the words "not involving moral turpitude" are wholly redundant and useless. Hence the legislature must have intended that the offenses for which the convictions were had must be measured by the standards of the state of North Dakota; that is, that such offenses must be felonies as defined by the statute, § 9197, supra, and involve moral turpitude as determined by the policy of the law of North Dakota. Again, considering the primary purpose of the statute to impose an increased penalty where the depravity of the defendant or his criminal tendency is evidenced by former convictions, it would seem that the legislature must have intended that the offenses for which prior convictions were had must be of the same quality—that is, be felonies involving moral turpitude—as the offense for which the increased penalty is imposed under the act. Surely the legislature did not intend that if a defendant were twice convicted of offenses made felony by statute but not involving moral turpitude, and twice sentenced to the penitentiary therefor and subsequently convicted of, say, grand larceny, an offense involving moral turpitude, the act should apply; but if he were twice convicted of grand larceny and subsequently convicted of some offense made felony by statute but not involving moral turpitude, the provisions of the act should not apply. In other words, the tests imposed by section four of the act must be applied alike to all convictions, both present and former, domestic and foreign. Viewed in this light it is clear that the words of section four of chapter 126, supra, can be given effect and there is no redundancy. And viewed in this light there is no indefiniteness or uncertainty as to the offenses to which the provisions of the statute shall apply.

Next, it is contended that though the statute may be applicable to some violations of the prohibition act as of a second offense, it does not

necessarily apply to all such violations. It is urged that a distinction is to be made between the confirmed bootlegger who deliberately and flagrantly violates the law for profit and the ignorant citizen who manufactures liquor for his own private use without any intent to violate the law and ignorant that he is doing so. Accordingly, appellant contends that the trial court erred in refusing to permit him to show the circumstances with respect to the offense for which sentence was being imposed; that whether or not that particular offense or either of the offenses for which prior convictions were had involved moral turpitude, was a question of fact to be determined from all the circumstances.

We are unable to agree with the contentions thus urged. It is clear to us the legislature intended that in applying the act, offenses of which the defendant had theretofore been convicted should be considered as a class and did not contemplate that it should be left to the judgment of each judge or court to say from the facts in each particular case whether or not the offense thus under consideration was one which involved moral turpitude. In other words, the legislature did not intend that there should be a retrial of the facts on which any conviction, present or former, rested. It being shown that a judgment of conviction has been entered against the defendant, such judgment must be held to be final and conclusive as against him. It may be that the laws enacted for the purpose of making effective the constitutional ban on the liquor traffic are extreme in some instances and that if strictly enforced individuals who violate the law without intent to do so may be made to suffer its penalty. But we are not here concerned with such cases. We are dealing with the practical application of the legislative intent as expressed in the act under consideration "with a view to effect its objects and promote justice." The act applies to former convictions in other states as well as to those in North Dakota. Practically it would be impossible to pass upon the merits of cases arising in other jurisdictions. We therefore hold that there was no error on the part of the trial court in refusing to consider the offer of the appellant to show the circumstances with respect to the several offenses of which he had been convicted for the purpose of passing upon the question of their moral turpitude. See People v. De Bellis, 87 Misc. 459, 150 N. Y. Supp. 1064.

Lastly, the defendant insists that the case must be reversed and re-

manded for the reason that the trial court erroneously construed the statute as mandatory upon him in that it required him to impose the maximum penalty fixed by law.

There is merit to the defendant's contention in this regard. Evidently the act here under consideration, chapter 126, Session Laws 1927, supra, was adapted from the New York statute, §§ 1941–1943, Penal Law, N. Y. (Consol. Laws, chap. 40), Gilbert's Criminal Code, 1926, pp. 625, et seq. Under §§ 1941 and 1942 of the New York statute, the court must impose a more severe penalty where the conviction is for a second felony than might be imposed if the conviction were for a first offense, and if the conviction is for a fourth offense, then the court has no discretion but must impose a sentence of life imprisonment. People v. Raymond, 96 N. Y. 38, 4 Am. Crim. Rep. 124; People ex rel. Friedman v. Hayes, 172 App. Div. 442, 158 N. Y. Supp. 949. That is, these statutes fix a new minimum as well as a new maximum penalty, and to that extent restrict the exercise of discretion on the part of the court. Apparently, in the instant case, the trial court gave such a construction to the provisions of chapter 126, supra. This act, however, (§§ 1 and 2) simply increases the maximum penalty which may be imposed where the offender theretofore has been convicted of two or more felonies involving moral turpitude, leaving the minimum penalty unchanged, thereby enlarging the field in which the court may exercise this discretion. Thus § 1 provides: ". . . the maximum punishment or penalty of imprisonment for such offense shall be twice the maximum sentence now or hereafter prescribed by law for a first conviction of said offense." And § 2 provides: ". . . the maximum punishment or penalty of imprisonment for such offense shall be life imprisonment."

It is clear that under these provisions the court imposing sentence may exercise his discretion as to the penalty to be imposed, within the limits of the law. Those limits are the minimum prescribed in cases of first offenses and a maximum of twice the maximum for a first offense where sentence is being imposed for a third conviction, and a maximum of life imprisonment where sentence is being imposed for a fourth conviction. Of course in order to properly exercise the wide discretion thus reposed in the judge under this statute he may, and should, make inquiry with respect to the facts, not only in regard to the offense for

which sentence is being imposed, but also with respect to the offenses for which prior convictions were had. (In this connection see, also, § 10,944, Comp. Laws '013.) But such inquiry is for the purpose of enabling him to exercise his discretion wisely and not to determine whether the provisions of the law are applicable to the particular case. In the instant case, the trial court did make such inquiry, but stated at the time of imposing the sentence that he had no discretion in the matter but was required under the statute to impose the maximum penalty prescribed. And he did impose such maximum penalty. We think, therefore, that the judgment and sentence must be vacated and set aside and the case remanded to the district court in order that a sentence may be imposed for such term as the court shall, in his discretion, deem fit and proper, considering all the circumstances, taking into consideration, of course, the time which the defendant has already served.

The judgment and sentence are therefore vacated and set aside and the case is remanded to the district court for disposition in accordance with this opinion.

BURKE, Ch. J., concurs.

BURR, J. (concurring). I adopt the principles set forth in the syllabus and concur in the conclusion reached by Judge Nuessle though not with all of the reasoning.

The crime to which the defendant pleaded guilty on May 28, 1928, is a felony under our statute. Petitioner admits that under the name of Joe Holoski he was convicted of grand larceny in 1914 in Wisconsin and sentenced to serve a term of one year in the Wisconsin state reformatory; and that in the year 1917 in St. Louis county, Minnesota, under the same name he was convicted of perjury and sentenced to serve a term of ten years in the Minnesota State Prison.

The defendant says, however, that the felony for which he is serving sentence is not such a felony as under the provisions of this chapter 126 of the Session Laws of 1927 authorizes or permits the increase of the penalty and § 4 of the act says:

"Provided, that the provisions of this Act shall not apply to offenses made felonies by statute not involving moral turpitude."

Turpitude is defined by Webster as "inherent baseness or vileness of

principle, words, or actions; shameful wickedness; depravity." There appears to be a tendency to restrict the term "moral turpitude" to sexual crimes; but the meaning is much broader than this. The term "moral" adds nothing "to the meaning of the term other than that of emphasizing which often results from a tautological expression," (See Hughes v. State Medical Examiners, 162 Ga. 246, 134 S. E. 46) and, as said in Crabb v. Kansas State Dental Examiners, 118 Kan. 513, 235 Pac. 830: "Whatever is forbidden by law must for the time being be considered as immoral." The supreme court of California, in Re Coffey, 123 Cal. 522, 56 Pac. 448, says the term turpitude is defined as "everything done 'contrary to justice, honesty, modesty, or good morals,'" and the criminal charge involved was a misdemeanor.

It is not necessary to prove a bad motive on the part of one in order to have it said that he is guilty of moral turpitude. During the war many with good motives, though some might think them perverted, opposed and obstructed the recruiting and enlistment service of the United States. By the federal statute it is a felony to do this either by inducement or persuasion. See Espionage Act of June 15, 1917. One Daniel O'Connell was indicted, charged with violating this law, and found guilty. See O'Connell v. United States, 253 U. S. 142, 64 L. ed. 827, 40 S. Ct. 444. He was a member of the bar of California, and proceedings for his disbarment were commenced on the charge that he was an attorney "convicted of a felony or of a misdemeanor involving moral turpitude." See Re O'Connell, 184 Cal. 587, 194 Pac. 1010. The supreme court of California in the body of the opinion says:

"In his answer the accused sets up certain matters alleged to be shown by the so-called bill of exceptions attempted to be incorporated as a part of the record in his case on the review of the proceedings by the Supreme Court of the United States, as showing that under the circumstances of his case there was no moral turpitude on his part. We cannot even enter upon a discussion of this claim on its merits. As we have seen the record of conviction is made conclusive evidence in so far as this proceeding is concerned."

Thus conviction for a felony made the defendant infamous and therefore showed conclusively he was possessed of moral turpitude. Later he made application for reinstatement. In Re O'Connell, 199 Cal. 538,

48 A.L.R. 1232, 250 Pac. 390. The Court in the body of this opinion (page 544) says:

"There can therefore be no question but that the moral obliquity of the petitioner was established by his conviction, which led to his disbarment. The record was conclusive evidence of the justice of the conviction and laid on him a moral stigma that rests upon him until it be satisfactorily explained, or there is unmistakable evidence, by years of correct living and a proper attitude on the part of the convicted person, that it no longer exists."

In disbarring him the court had said (184 Cal. 587):

"That such conduct on his part would involve moral obliquity and constitute a base offense against his fellow men and his country entirely regardless of statute prohibiting it cannot, it seems to us, be seriously questioned."

Moral turpitude reflects an attitude of mind, is determined by the act, not by the sentence, and is such as taken in connection with the crime charged, ordinarily renders a person infamous. Where moral turpitude is connected with acts defined as crimes anything which renders him infamous is considered to have been caused by moral turpitude.

Infamous crimes have always been considered the result of moral turpitude in the criminal. At common law a "person convicted of treason, felony and the crimen falsi were rendered infamous,"—the latter under the ancient civil law embracing all crimes based on fraud and deceit, including forgery, perjury, and such matters where fraud and deceit were involved. See Taylor v. State, 62 Ala. 164. Hence it has always been the rule that one guilty of a crime which rendered him infamous showed conclusively that he possessed moral turpitude. In the case of Bartos v. United States Dist. Ct. (C. C. A. 8th) 19 F. (2d) 722, 723, the circuit court of appeals of the United States said, with reference to the charge involved "it was not a felony—hence not infamous." In the case of Ex parte Wall, 107 U. S. 265, 273, 27 L. ed. 552, 556, 2 S. Ct. 569, the Supreme Court of the United States, in dealing with the question of the disbarment of an attorney says: "If regularly convicted of a felony, an attorney may be struck off the roll, as of course, whatever the felony may be, because he is rendered infamous." Hence it is clear that felonies at all times have been considered infamous crimes, and always involve moral turpitude.

Our statute defines a felony as "any crime which is or may be punishable with death or imprisonment in the penitentiary." See §§ 9197 and 10,387 of Comp. Laws 1913. The statutory definition of a felony is the only definition which we know. As said in § 4331 of the Comp. Laws, "in this state there is no common law in any case where the law is declared by the Codes." It is true that § 11,179 says:

"The procedure, practice and pleadings in the district courts of this state, in criminal actions or in matters of a criminal nature, not specially provided for in this code, shall be in accordance with the procedure, practice and pleadings under the common law."

But this has nothing whatever to do with the nature of the offense or its classification. It is confined to "the procedure, practice and pleadings in the district courts of this state."

Under such definition of felony so far as the effect of the conviction is concerned, all distinctions between mala in se and mala prohibita disappears. When our statute states that the commission of certain acts is a felony it makes no difference whether it be making that a crime which before was legally innocent, or lowering a misdemeanor to the class of felony, or merely restating the common law. Today felonies are determined by the nature of the punishment which may be inflicted, the punishment is presumed to be according to the nature of the deed, and it is by the punishment the criminal is declared to be infamous.

All crimes not defined as felonies are misdemeanors but there are misdemeanors which involve moral turpitude; or in other words all felonies and some misdemeanors involve moral turpitude. It is essential to know this because confusion arises at times owing to the use of such terms as "conviction for a felony or misdemeanor which involves moral turpitude." It is contended by the appellant that there are felonies which do not involve moral turpitude and he bases this upon some such statements and quotations. The matter has come frequently before the courts in the matter of disbarment of attorneys. In Re Henry, 15 Idaho, 755, 21 L.R.A.(N.S.) 207, 99 Pac. 1054, where proceedings were brought for the disbarment of an attorney, the supreme court of that state, in defining moral turpitude under a provision of § 4002 of the Idaho Code providing for the removal or suspension of an attorney upon "his conviction of a felony or misdemeanor involving moral tur-

pitude," shows that larceny involves moral turpitude regardless of whether it is grand larceny or petit larceny. Of course grand larceny being a felony would involve moral turpitude from two standpoints—first, because it is larceny and second because it is a felony; whereas petit larceny though a misdemeanor comes within that class of crimes which show moral turpitude. Our statute is almost identical with that of Idaho providing that an attorney may be disbarred "when he has committed a felony or *a* misdemeanor involving moral turpitude." It inserts the article "a" and thus renders the true meaning in all of these cases where the law attempts to define a condition involving moral turpitude—assuming that a felony involves moral turpitude, and that there may be misdemeanors which do the same. See also Morrison v. State, 85 Tex. Crim. Rep. 20, 6 A.L.R. 1607, 209 S. W. 742. This distinction showing felonies to be infamous crimes and distinguishing between misdemeanors and infamous crimes at common law and misdemeanors which do involve moral turpitude is shown in State v. Taylor, 98 Mo. 240, 241, 11 S. W. 571.

In Ex parte Wilson, 114 U. S. 417, 29 L. ed. 89, 4 S. Ct. 935, 4 Am. Crim. Rep. 283, the Supreme Court of the United States says:

"What punishment shall be considered as infamous may be affected by the changes of public opinion from one age to another—for more than a century imprisonment at hard labor in the state prison or penitentiary has been considered an infamous punishment in England and America."

In this case cited the court had under consideration a petition for a writ of habeas corpus based on the fact that the petitioner had been convicted upon information and not indictment and it was alleged in defense of the practice that he had not been found guilty of an infamous crime, and thus there was no violation of the provisions of the 5th Amendment of the United States Constitution, which says: "No person shall be held to answer for a capital or otherwise infamous crime unless on a presentment or an indictment of a grand jury." In the syllabus of the case the Supreme Court of the United States says: "A crime punishable by imprisonment for a term of years at hard labor is an infamous crime under the provisions of the 5th Amendment," and in the body of the opinion Justice Gray says:

"The associated words 'or otherwise infamous crime' must, by an

elementary rule of construction, include crimes subject to any infamous punishment, even if they should be held to include also crimes infamous in their nature, independently of the punishment affixed to them."

See also United States v. Petit, 114 U. S. 429, note, 29 L. ed. 93, 5 S. Ct. 1190.

Moral turpitude must in itself reflect to a certain extent the social attitude toward the acts complained of. As the United States Supreme Court in Ex parte Wilson, 114 U. S. 417, 29 L. ed. 89, 4 S. Ct. 935, 4 Am. Crim. Rep. 283, supra, says this attitude varies according to times and conditions. Surely our boasted progress from the times of eight and ten centuries ago has caused a change of attitude toward certain acts. Many acts which were not considered reprehensible then, either by the general laws of society or the laws of the land, are today considered wrongs and crimes. While we have mitigated punishments to a large extent, yet we have risen beyond the coarseness, vileness and lower standards of these preceding centuries, and what six hundred years ago was ordinary may today be considered as showing moral turpitude. From the days of the adoption of the state Constitution to the present time the liquor traffic has been outlawed in this state. It is true the constitutional provision was not self-executing; but one who violates the prohibition law in this state is setting at naught and boldly defying the Constitution of the state, the laws enacted to carry the constitutional provisions into effect and the express public policy of the state. Since the adoption of the 18th Amendment of the Constitution of the United States the liquor traffic is outlawed in the whole nation and one violating the laws enacted to carry this Amendment into effect is flagrantly and deliberately defying the Constitution of the United States. It is difficult to conceive how such a situation as that cannot be said to involve moral turpitude. It shows a debased and depraved attitude of mind on the part of the criminal toward his social obligations and his duty to the nation and the state. As said in Riley v. Howes (D. C.) 17 F. (2d) 647, 649: "Certainly since prohibition has become a part of the Constitution it cannot be said that conspiracy to violate the laws passed in accordance with this mandate involves no moral turpitude."

The offense charged is one forbidden by the state through its entire existence. The adoption of prohibition of liquor traffic by the state and

nation is an effort made to cure admitted evils and is a result of a moral attitude of the people toward an age old problem and its anti-social consequences. With its wisdom we are not concerned. The laws enacted for this purpose are the outgrowth of changed conditions and this change of attitude toward the problem renders most of the precedents from Bracton and Littleton through Coke and Blackstone down to yesterday of little value. The attitude of the public toward the liquor traffic in those days was entirely different from what it is today. The violation of regulations were looked upon as merely venal. Today, whether for good or ill, the state and nation have adopted a different policy. As said in State v. Macek, 104 Kan. 742, 748, 180 Pac. 986: "The times change. Men change, and their opinions change; their notions of right and wrong change. The United States, its government and people, have come a long, long way since the Washingtonian Society was organized in 1840 to combat intemperance.—The whole matter is one of public policy. And the public policy of a State must largely be shaped by legislation."

Violations of the expression of popular will set forth in the Constitution and the acts of the legislature present a situation where the defiant and persistent violator must be considered as engaged in an enterprise to undermine the constitutional fabric of the state and nation. Means are provided to change such constitutional and legislative provisions. Such criminal acts are the expression of anarchy and show a moral attitude which cannot be attributed to anything else than a determined purpose to set at defiance the nation and the state. It is true that all crime partakes of this feature, but these laws being a recent and direct change of front in an attack on an ancient and continued problem show a change in public policy and the violator must of necessity place himself in the position of one who not only violates the law but who also places himself in the position of rebellion against specific constitutional provisions.

If one merely advising others to violate the law of the land may be giving aid and comfort to the enemy and thus is considered to have such moral obliquity as results in moral turpitude it cannot be said that one who deliberately and intentionally and repeatedly defies a specific constitutional provision of the state and the laws made to carry it into effect, and defies a specific constitutional provision of the constitution

of his nation and the laws made to carry it into effect has not such moral obliquity, which irrespective of the legal classification of the crime, constitutes moral turpitude.

In Rousseau v. Weedin (C. C. A. 9th) 284 Fed. 565, the circuit court of appeals of the United States was considering the question of the deportation of an alien who had been convicted in the state of Washington for violating the state law against "jointist"—which appears to be but another name for blind-pigger. Under the law of Washington the crime of being a jointist was a felony, and punishable as a felony. The question was whether such alien should be deported because he had been "convicted of and admits having committed a felony or other crime or misdemeanor involving moral turpitude prior to his entry into the United States." The defendant had been convicted in Washington. He went to Canada, and then re-entered the United States. The circuit court of appeals held that "one who wilfully opens a place for conducting a business which is positively forbidden and made punishable by law as a felony is guilty of an offense which involves moral turpitude."

The supreme court of Massachusetts had occasion in the case of Jones v. Robbins, 8 Gray, 329, 349, to discuss the meaning of the term infamous punishment and says:

"Whether we consider the words 'infamous punishment' in their popular meaning or as they are understood by the constitution and laws, a sentence to the state prison for any term of time, must be considered as falling within them."

Hence it is clear from these holdings that where a man has been sentenced upon a conviction for a felony as the appellant in this case was sentenced, he is by that very fact shown to have committed a crime involving moral turpitude.

In Rudolph v. United States, 55 App. D. C. 362, 40 A.L.R. 1042, 6 F. (2d) 487, we have the decision of the supreme court of district of Columbia involving the status of a retired policeman who had violated the law of the United States regarding the "possession and transportation of intoxicating liquor" and the court holds that such an act "is a crime involving moral turpitude, the commission of which is ground for discontinuation of pension regardless of whether the crime be a first or second offense." It is true the decision takes into consideration that the retired officer at one time had taken an "oath

to support and defend the Constitution of the United States and to bear true faith and allegiance to the same." But the taking of an oath to support the Constitution does not impose a greater duty upon a citizen. It is the duty of every citizen to support the Constitution and laws of the nation and of the state. The supreme court of Oregon in the case of State ex rel. Young v. Edmunson, 103 Or. 243, 204 Pac. 619, says: "No boot-legger is a supporter of the Constitution and laws of the United States and of the state of Oregon." It is true this latter case was a disbarment case but the charge was the commission of acts involving moral turpitude and "illegal possession of intoxicating liquors" was the substance of the charge. The District Court of Columbia in Rudolph v. United States, 55 App. D. C. 362, 40 A.L.R. 1042, 6 F. (2d) 487, supra, says:

"The man who traffics in intoxicating liquors in violation of the Constitution and laws of the United States, whether it be the first or the tenth offense, is an offender against the public peace, dignity and morality of the United States and a conviction in a court of competent jurisdiction implies criminal intent."

It is difficult to see how that one can engage in the liquor traffic in violation of law without a deliberate intent because he does it intentionally and defiantly and when this is regarded in such a way as to be classified by our statutes as a felony the culprit becomes infamous and shows that he has such a condition of moral obliquity in relation to the nation and state and the laws of same that his mind is perverted and he is guilty of baseness in principle and in action.

As said in Rudolph v. United States, supra: "We are not much concerned with the distinction sought to be made between crimes malum in se and those which are merely malum prohibitum. Many things which were not considered criminal in the past have, with the advancement of civilization, been declared such by statute; and the commission of the offense, if it involves the violation of a rule of public policy and morals, is such an act as may involve moral turpitude." 55 App. D. C. 362, 40 A.L.R. 1042, 6 F. (2d) 487.

The supreme court of Kansas holds that although the unlawful possession of intoxicating liquor is a misdemeanor under the statutes of that state nevertheless it is one which involves moral turpitude.

"The expressed sentiment of the people of the state and nation is

that for reasons involving moral grounds the use of liquor must be curbed, and to that end various acts in relation to it have been forbidden because to permit them would tend to frustrate the general purpose of constitutional prohibition. In Kansas one of these forbidden acts is the possession of liquor. He who disobeys the statute in this regard to that extent refuses to abide by the legislative declaration of public policy and in some degree lends himself to its defeat. In this aspect there is no difference in principle between the violation of the provision against the possession of liquor and those forbidding its manufacture or sale. None of them would necessarily be immoral in the absence of written law."

See State v. Bieber, 121 Kan. 536, 48 A.L.R. 255, 247 Pac. 875.

In Kurtz v. Farrington, 104 Conn. 257, 48 A.L.R. 259, 132 Atl. 540, the supreme court of Connecticut says: "One convicted of violating the National Prohibition Act by the possession of property for the manufacture of intoxicating liquor and the possession of liquor for beverage purposes is guilty of moral turpitude, and if the conviction carries imprisonment, it may be shown to affect his credibility as a witness under a statute permitting conviction of crime to affect credibility."

In the body of the opinion the court says: "Our country and our Constitution are inseparable. The Constitution has held our past; it now holds our present; and, if we keep to its defined course, it will sustain our future. The National Prohibition law and the state laws passed in aid of the enforcement of the 18th Amendment are vitally necessary to the life and strength of this Amendment. Without them it must fail in its purpose. The violation of these laws is a violation of the Constitution of the United States. If one provision can be violated with impunity, another soon will be. If one who gives aid to the enemy of his country in time of war is guilty of moral turpitude, how may we distinguish the man who in time of peace, by his deliberate course, helps to destroy the Constitution."

And later the same opinion says that we hold "that violations of the 18th Amendment necessarily involve moral turpitude."

To the same effect is State ex rel. Young v. Edmunson, 103 Or. 243, 204 Pac. 619, supra, where the supreme court of Oregon says: "Violation of the prohibition law and the willful publication of false and

scandalous matters concerning others are crimes involving moral turpitude," and here the violation of the prohibition law was a misdemeanor. However the case was like that of Rudolph v. United States, 55 App. D. C. 362, 40 A.L.R. 1042, 6 F. (2d) 487, supra, aggravated by the fact defendant had taken an oath to support the Constitution of the United States and the Constitution of Oregon.

It is the contention of the defendant that at all times the violation of the liquor laws has not been considered such a crime as involves moral turpitude and generally the violation of the liquor laws is classed as a misdemeanor. At common law such misdemeanor was never considered as involving moral turpitude. The appellant has cited a list of cases as follows: "Ex parte State, 199 Ala. 255, 74 So. 366 (1916); Lakey v. State, 206 Ala. 180, 89 So. 605 (1920); Ex parte Marshall, 207 Ala. 566, 25 A.L.R. 338, 93 So. 471 (1922); Swope v. State, 4 Ala. App. 83, 58 So. 809 (1912); Abrams v. State, 17 Ala. App. 379, 84 So. 862 (1920); Lyles v. State, 18 Ala. App. 62, 88 So. 375 (1921); Horsley v. State, 19 Ala. App. 263, 96 So. 937 (1923); Wheeler v. State, 4 Ga. App. 325, 61 S. E. 409 (1908); Edenfield v. State, 14 Ga. App. 401, 81 S. E. 253 (1914); Hays v. State, 47 Tex. Crim. Rep. 149, 82 S. W. 511; id. 47 Tex. Crim. Rep. 150, 83 S. W. 201; Holmes v. State, 68 Tex. Crim. Rep. 17, 150 S. W. 926; Jennings v. State, 82 Tex. Crim. Rep. 504, 200 S. W. 169; Carter v. State, 100 Tex. Crim. Rep. 95, 271 S. W. 629; McGovern v. Hayes, 75 Vt. 104, 53 Atl. 326," to show that "violations of the prohibition laws are not offenses involving moral turpitude." An analysis of these cases show that in almost every case the issue arose over the question of the impeachment of a witness by showing his conviction for a crime, and under a statute which did not permit of impeachment by such method except in cases where the conviction was for a crime involving moral turpitude. In the cases listed, with the exception of the third, the conviction depended upon for impeachment was for a misdemeanor merely, —one was a violator of a municipal ordinance—and the court held such misdemeanors did not show moral turpitude. Hence these are not in point in the case because this appellant was not convicted of a misdemeanor, but of a felony. The third case cited will be discussed later. The tenth case does not even remotely touch the subject, and we cannot find the 13th case listed. It will also be noted that only two of these

cases,—the third and seventh—arose after the adoption of the 18th Amendment to the Constitution of the United States.

In the third case in the list of cases cited by appellant—Ex parte Marshall, 207 Ala. 566, 25 A.L.R. 338, 93 So. 471,—the supreme court of Alabama says:

"The distillation of spiritous liquors, although made a felony by statute, does not involve moral turpitude so as to admit evidence of conviction of such offense as having the credibility of a witness."

But this holding is not in harmony with the general definitions and certainly violates the principle involving in a felony itself—that is that a man guilty of a felony is ipso facto rendered infamous and that no man could be rendered infamous without showing moral turpitude. The opinion shows it is based upon a legal definition adopted by the courts of Alabama decades ago and which the Court refused to change. But laws change, standards change, and interpretations must change with them.

The defendant cites the case of Coykendall v. Skrmetta (C. C. A. 5th) 22 F. (2d) 120. An investigation of that case shows that the violation of the liquor law of which the defendant was convicted was a mere misdemeanor and made so by statute.

It is the contention of the defendant that to hold all felonies involve moral turpitude does violence to the express understanding and interpretation given by the legislature as set forth in § 4 of the act under consideration. This section reads as follows:

"Provided, that the provisions of this Act shall not apply to offenses made felonies by statute not involving moral turpitude."

In reviewing the history of the Act we find the bill was introduced in the House and after passing that body was sent to the Senate. Here it was amended by the addition of § 4, and upon its passage in the Senate was returned to the House, where the amendment was concurred in and the bill as amended was passed. It would appear therefore the legislature had in mind that there were felonies which did not involve moral turpitude, and that as to these felonies the law was not applicable.

In this case there is much speculation as to "offenses made felonies by statute not involving moral turpitude," and counsel for defendant has urged the legislature must have had in mind some distinction between so-called common-law felonies and statutory felonies. As we

have shown there is no such distinction in our law. There is no question but what the legislature may make the commission of certain acts a felony and at the same time say the law under consideration should not apply to it. In the statute under consideration the legislature did not see fit to specify what were the "offenses made felonies by statute" to be considered as "not involving moral turpitude." It did not say engaging in liquor traffic as a second offense was to be omitted. Not having so specified we need not concern ourselves in regard to some other possible felony which by the statute has been made a felony, and yet the legislature said should not be considered as involving moral turpitude, or whether this could be done. When we reach that kind of a felony it will be time to consider it.

BIRDZELL, J. I dissent. We are construing an habitual criminal statute which authorizes the imposition of life sentences in the penitentiary in cases where the law is applicable. In § 4 of the statute the legislature provided that the act should "not apply to offenses made felonies by statute not involving moral turpitude." The legislative history clearly shows that this act would not have been passed at all but for the insertion of this proviso. What does this proviso mean? What was in the mind of the law making body? That is the question to be judicially answered. I agree that the act should not be strictly construed, but in my opinion there is a vast difference between construing a penal statute strictly in favor of the accused and against the state and construing it strictly against the accused and in favor of the state. As I view it the latter is the effect of the majority holding here. Surely, an act that authorizes the imposition of a life sentence should be reasonably clear in its statement of the conduct on account of which such a penalty is imposed. The legislature having said that the extreme penalties provided should not apply to offenses made felonies by statute not involving moral turpitude, it has in effect said that there are such offenses. It cannot be assumed that it employed so much language to no purpose whatsoever. It is the duty of the court to ascertain if possible what this language means. It is the duty of the court to say what felonies the legislature had in mind when it excepted offenses not involving moral turpitude or, if it cannot do so, to hold the act void for indefiniteness. In my opinion the court can not possibly give effect to

the legislative intention by indulging in a process of reasoning to the conclusion that all forbidden acts involve moral turpitude. For the purpose of applying this act the very clear legislative determination to the contrary should be conclusive on the court. Any construction of the language employed by the legislature based upon a judicial conception of moral turpitude which obviously differs from that which was in the legislative mind, is in my judgment not permissible. It not only construes a highly penal statute strictly against the accused, but it makes the penalties applicable upon a much broader basis than was plainly intended.

It seems to me that the majority members of the court in the instant case, by their construction, effectually strike from the act the proviso, which is a vital part of it, and give effect to the remaining three sections as though the proviso did not exist. This they do while agreeing that the proviso was intended to qualify the three sections which they enforce but without being able to agree upon the extent to which the sections enforced are qualified. When a highly penal statute is so indefinite in its meaning that a majority of the members of the court of last resort in the state are unable to agree upon an interpretation, it is surely lacking in that degree of clearness and certainty which heretofore has always been required of penal statutes.

How can the decision in the instant case be thought to accord with the rule of construction applied in State v. Fargo Bottling Works Co. 19 N. D. 396, 26 L.R.A.(N.S.) 872, 124 N. W. 387, at page 402 of the state report, as follows?

"Penal statutes, therefore, 'like all others, are to be fairly construed according to the legislative intent as expressed in the enactment, *the court refusing on the one hand to extend the punishment to cases which are not clearly embraced in them,* and on the other equally refusing by any mere verbal nicety, or forced consideration or equitable interpretation, to exonerate parties plainly within their scope.' "

The majority apparently do agree that the offense in question involves moral turpitude, but they reach this result by a process of reasoning that proves every felony to be morally turpitudinous and hence leaves no room for the operation of the proviso. This statute given the most latitudinous construction possible can not be considered to authorize an individual judge to impose the extreme penalties provided for

conduct which he considers to be morally turpitudinous. As I view the matter, it is not a question of the individual opinion of any judge or number of judges as to what is or is not turpitudinous conduct. But it is a question as to what the legislature had in mind when it adopted the proviso. The individual judge might well think that a liquor offense is one of the most heinous offenses in the category of crime, yet if he understood that people generally—and particularly the members of the legislature—did not so regard it and in fact did not consider such a violator to be guilty of moral turpitude at all, judicial duty would require the law to be enforced accordingly. Neither, in my opinion, is it proper, in considering whether or not liquor offenses were thought by the legislature to be offenses involving moral turpitude, to use as examples the most flagrant violations, for the act in question and the exception apply according to *classes* of offenses and not according to the circumstances of the particular offense. Hence, while judicially considering whether or not one offense involves less of moral turpitude than another, we consider it only for the purpose of arriving at legislative intention and not for the purpose of expressing an individual or personal view.

If there be any felony that involves less of moral turpitude than the possession of a few ounces of fermented grape juice, I know not what it is; therefore, I do not know what could have been in the mind of the legislature when it used the expression "offenses made felonies by statute not involving moral turpitude" if not such an offense. The majority not only do not suggest any other, but they practically eliminate the possibility of there being one. Hence, by saying in legal effect that one guilty of possessing a few ounces of fermented grape juice obtained or allowed to ferment since February 1, 1920 (this date is used in view of § 10,145b12, 1925 Supplement to the Compiled Laws of 1913, which recognizes that liquors acquired prior to that date may be lawfully possessed), might be sentenced under the law in question to life imprisonment, the majority members, it would seem, deny all effect to the proviso.

True, one opinion does contain the suggestion that the proviso was added to the law in question for the sole purpose of excusing from its extreme penalties those who might have been convicted of felony in some other state on account of some act which is not prohibited here.

This rather ingenious suggestion appears to me to be altogether fanciful. Having denied to ordinary words their usual and well understood meaning, this opinion attaches a latent meaning which, it seems to me, would not *readily* occur to anyone. By this construction moral turpitude is made to mean a quality (no quality in particular) of any act done which would violate some penal statute existing in North Dakota. I am unable to understand how such an ordinary expression can be thought to convey this rather peculiar meaning. If this be the meaning the legislators had in mind when they employed the expression "moral turpitude," they were surely straining for originality; for although they had copied the Baumes Law of New York almost completely (See §§ 1941–1943, chapter 41, article 174, Cahill's Consolidated Laws of New York, 1928 Anno. Supp.), they omitted the following expression therein referring to crimes committed in other states as a basis for applying the added punishment "crimes which if committed within this state would be felonies." Was this language rejected for vagueness and uncertainty? According to this principal opinion they substituted for this indubitably definite criterion that of "moral turpitude" which, this opinion says, means the same thing. Then, it proceeds, "viewed in this light there is no indefiniteness or uncertainty as to the offenses to which the provisions of the statute shall apply."

It may very well be that our penal laws were thought by the legislature to accord so perfectly with moral law as to have become, in their minds, synonymous with it. Perhaps mere reference to moral turpitude should at once suggest a survey of our penal code, but I sincerely doubt the connotation. If "moral turpitude" were intended to refer only to offenses committed in other states, as this opinion suggests, a world of doubt would have been removed by the addition of a parenthetical phrase so that it would have read: "Provided, that the provisions of this Act shall not apply to offenses made felonies by statute (in other states) not involving moral turpitude."

Under the law before us the proviso means something or it means nothing. As I see it the result of the majority opinions makes it to mean nothing. It is in legal effect stricken from the act. But if this represents a misunderstanding of the holdings of the majority, and if their opinions are more properly construed as holding that the offense in question is one *clearly* embraced in the act as one involving moral

turpitude, they reach a result which, it seems to me, can not be reached by applying ordinary rules of construction heretofore consistently followed. Admittedly, the legislature, in providing for imposition of double and life sentences for habitual criminals, set an indefinite standard of conduct as a test—one which had been previously held in a number of jurisdictions not to embrace liquor offenses—, nevertheless it is said that the legislators here, though employing this ambiguous test, *clearly* intended to embrace such offenses. I can not so divine their intention. I do not know which construction of the variously defined standard they intended to adopt. Certainly, the legislature has furnished no guide pointing to the construction or constructions adopted by the majority. But it is reasonably certain that it had two classes of felonies in mind; viz., common-law felonies and statutory felonies, and that it provided that the act should apply to all of the former and only to such of the latter as involve moral turpitude. We know that there are many statutory felonies that are mere extensions of common law felonies and involve the same moral elements. We also know that the offense in question is not one of them. How, then, can it be said that this offense falls *clearly* within the act? Before a double sentence or a life sentence is judicially passed, all substantial doubts as to whether the law by fair intendment authorizes it should be removed.

The judgment appealed from should be reversed and the original sentence restored.

CHRISTIANSON, J. (dissenting). The sentence and judgment which the defendant challenges on this appeal could only be imposed upon him under the so-called habitual criminal act,—chapter 126, Laws 1927. Hence, the sole question presented for determination in this case is: Did the legislature intend that said chapter 126, Laws 1927, should apply to persons convicted of the crime of engaging in the liquor traffic as a second offense?

It is elementary that the object of all statutory construction is to ascertain and give effect to the true legislative intent. It is the duty of the courts to declare the law as it is and they are never justified under a pretense of construction to encroach upon the legislative function. 26 Am. & Eng. Enc. Law, p. 597. In short, it is the duty of the courts to declare and apply the law as the legislature has made it,—that is,

to ascertain and give effect to the intention of the lawmakers. In construing statutes the courts are to be guided by certain rules which wisdom and experience have sanctioned. The Paulina v. United States, 7 Cranch, 52, 60, 3 L. ed. 266, 268; Cary v. Curtis, 3 How. 236, 239, 11 L. ed. 576, 578. The purpose of all such rules is to furnish guidance for ascertaining the legislative intent. The primary rule of statutory construction is that the intent of the lawmakers is to be found in the language they have used, and when such language is clear and unambiguous it must be held to mean what it expresses; but where the language is ambiguous and of doubtful import, it becomes the duty of the courts (in any case where the statute is invoked) to ascertain and give effect to the legislative intent and meaning. In short, the judicial function of statutory construction lies wholly within the domain of ambiguity and uncertainty. When a statute is uncertain and ambiguous and the language thereof as a whole leaves doubt as to the legislative intent and purpose, resort may be had to extrinsic aids. The history of the passage of the law may be considered. The reports of committees, the introduction of amendments, petitions presented, testimony given before legislative committees, have all been considered by the United States Supreme Court in construing statutes. Church of the Holy Trinity v. United States, 143 U. S. 457, 36 L. ed. 226, 12 S. Ct. 511; Blake v. National City Bank, 23 Wall. 307, 23 L. ed. 119; Lincoln v. United States, 202 U. S. 484, 50 L. ed. 1117, 26 S. Ct. 728. See also 36 Cyc. 1136, 1138. "It is needful in the construction of all instruments to read them in view of the surrounding facts. To understand their purport and intended application, one should, as far as possible, be placed in a position to see the subject from the maker's standpoint and study his language with that outlook. Statutes are no exception. The court may look to the surrounding circumstances." 2 Lewis's Sutherland, Stat. Constr. 2d ed. pp. 883, 884.

It is conceded that this case is one in which the court is required to exercise the function of construction. The majority opinions themselves bear ample evidence that the language of the statute in question here is not such that it can be said there is no room for construction. The provisions of the act are set out in full in the prevailing opinion. Some reference to the history of the passage is contained in the concurring opinion; but both opinions omit incidents in the history of the

enactment which, in my judgment, are of vital importance in ascertaining the legislative intention.

The bill originated in the House of Representatives. House Journal, p. 263. It was received by the Senate on February 27, 1927. Senate Journal, p. 380. After having been placed upon its first and second reading it was referred to the Senate Committee on Judiciary Senate Journal, pp. 433, 434. On February 19, 1927 the Senate Judiciary Committee recommended that the bill be indefinitely postponed and this recommendation was adopted. Senate Journal, p. 362. On February 21 and 23, 1927, the bill was re-referred to the Judiciary Committee of the Senate. Senate Journal, pp. 692, 721. On February 26, 1927, the Judiciary Committee of the Senate recommended that the bill be amended by adding the following: "Sec. 4. Provided that the provisions of this act shall not apply to offenses made felonies by statute not involving moral turpitude." The committee further recommended that the bill, as so amended, be passed. The recommendation of the committee was adopted and the bill as amended was passed by the Senate, February 28, 1927. Senate Journal, pp. 886, 887. The House of Representatives thereafter concurred in the Senate amendment; and the bill, as amended and passed by the Senate, became law by approval of the Governor.

It is a fundamental rule of statutory construction that in case of conflict or ambiguity "the last expression of the legislative will is the law." And "in case of conflicting provisions in the same statute, or in different statutes, the last enacted in point of time prevails; and . . . if both were enacted at the same time, the last in order of arrangement controls. . . . A proviso in an act repugnant to the purview thereof is not void but stands as the last expression of the legislative will." 36 Cyc. 1130. See also 26 Am. & Eng. Enc. Law, p. 734; 11 Enc. U. S. Sup. Ct. Rep. 130; Lewis's Sutherland, Stat. Constr. 2d ed. § 280. The rule is merely the embodiment of common sense.

There is no doubt as to what provision of the law under consideration here contains the last expression of the legislative will nor of the importance which the lawmakers attached thereto. As noted, the lawmakers refused to pass the habitual criminal act if it was made applicable to all felonies. They declared in the most unmistakable terms and manner that it was their intention that the law should not be applicable

to all persons convicted of felonies. They said in words, and in circumstances, too clear for doubt that it was their deliberate intention that no person should be subject to the provisions of the act upon conviction of any offense made a felony by statute "not involving moral turpitude." This declared intention of the lawmakers cannot be wiped out by assertions that "all felonies and some misdemeanors involve moral turpitude," and intimations that if the members of the North Dakota legislature supposed that any offense made a felony by statute did not involve moral turpitude they were mistaken. We are not concerned here with whether the views of the members of the North Dakota legislative assembly in this regard are in accord with those of jurists or publicists in other jurisdictions or in accord with the views of the members of this court. We are merely concerned with ascertaining the intention of the lawmakers as expressed in the law, and with that alone; and it is the duty of the courts of this state, to give effect to that intention without regard to whether the members of the North Dakota legislature used the most precise language in expressing it.

It is said in the prevailing opinion that in this state "we are not subject to the common law rule which requires that penal statutes shall be strictly construed. This rule is abrogated by our statute." The statutory provision thus relied upon was embodied in our penal code upon its adoption in this jurisdiction and has remained in force ever since. That provision reads as follows:

"The rule of the common law that penal statutes are to be strictly construed, has no application to this code. All its provisions are to be construed according to the fair import of their terms, with a view to effect its objects and to promote justice." Comp. Laws 1913, § 9201.

Surely it will not be contended that this legislative declaration was intended to confer upon the courts any authority to supply deficiencies in statutes that create or define criminal offenses; or that it was intended to give to the courts license to enter into the realms of conjecture or speculation, and as a result bring persons or acts within such statutes which otherwise would be outside of their letter and spirit. On the contrary, this court has specifically recognized that § 9201, supra, has no such effect. In applying and construing this provision this court has said that if a penal statute "contains a patent ambiguity and admits of two reasonable and contradictory constructions, that which operates in

favor of a party accused under its provisions is to be preferred;" and that penal statutes "like all others, are to be fairly construed according to the legislative intent as expressed in the enactment, the court refusing on the one hand to extend the punishment to cases which are not clearly embraced in them, and on the other equally refusing by any mere verbal nicety, or forced consideration or equitable interpretation, to exonerate parties plainly within their scope." State v. Fargo Bottling Works, 19 N. D. 396, 402, 26 L.R.A.(N.S.) 872, 124 N. W. 387. In a word, the rule of liberal construction merely places upon the courts a little larger and more comprehensive duty to search for, ascertain and give effect to, the legislative intent. It in no sense grants any power or license to the judiciary to infringe upon the legislative function. Liberal construction does not mean, as the members of the majority seem to infer, that a criminal law shall be construed liberally in favor of the prosecution and strictly against a person accused of violating it, and that in case of ambiguity and uncertainty, the courts may enter into the realms of speculation and conjecture to find, if possible, some imaginary basis for a legislative intention that it should be applied against the accused. "The rule of liberal construction only requires that a statute be so enforced as to carry into effect the will of the legislature as expressed in the terms thereof, and to give, not stintedly or niggardly, but freely and generously, all the statute purports to give. It does not, however, warrant an extension of the statute to the suppression of supposed evils or effectuation of conjectural objects and purposes, neither referred to nor indicated by any terms used nor clearly within the spirit of the legislation." 25 R. C. L. p. 1076.

The rule of liberal construction does not mean that when a certain act is charged to be violative of a statute that the person accused has the burden of showing that the statute does not apply. It is a fundamental rule even as regards civil rights predicated upon a statute that a person who invokes the statute must show that he is clearly within the terms thereof; and conversely that no person can be subjected to a statutory liability unless it is shown by the party who seeks to enforce the liability that the person sought to be charged is within the terms of the statute. 2 Lewis's Sutherland, Stat. Constr. 2d ed. §§ 571 et seq. Surely no stricter rule should be applied against a person charged with violating a statute where the penalty for violation is imprisonment than

where the penalty for violation is liability for damages, and measured in terms of money. In the instant case the duty rests upon the state to show that the legislature intended that the law in question should apply to convictions under the state prohibitory laws. If there is any doubt as to whether the law is applicable, the defendant and not the state is entitled to the benefit of the doubt. State v. Fargo Bottling Works, 19 N. D. 396, 402, 26 L.R.A.(N.S.) 872, 124 N. W. 387, supra. The court may not, under the guise of construction, enter into the realms of speculation or supply deficiences. 26 Am. & Eng. Enc. Law, pp. 656, 657; State v. Taylor, 7 S. D. 533, 64 N. W. 548; Wassem v. Fargo, 49 N. D. 168, 25 A.L.R. 758, 190 N. W. 546.

Let us briefly consider the condition which confronted the lawmakers of this state, the subject with which they were dealing, and the condition of the law, at the time they enacted the statute under consideration here. The first prohibitory law enacted in this state provided that a conviction thereunder for a second or successive offense should render the person so convicted subject to imprisonment in the state's penitentiary for not less than one year nor more than two years. Laws 1890, chap. 110, § 10. This provision has remained in force during the entire history of the state (Comp. Laws 1913, § 10,109) and was also embodied in substantially the same form in the law defining the offense of engaging in the liquor traffic. Laws 1923, chap. 268, § 4. It is this latter statute that the defendant in this case is charged with having violated. This statute provides:

"Any person who shall within this state commit the crime of engaging in the liquor traffic . . . shall for the first offense be deemed guilty of a misdemeanor, and upon conviction thereof, shall be fined in any sum not less than $200.00 nor more than $1,000.00 and be imprisoned in the county jail not less than ninety days nor more than one year; and for the second and every successive offense shall be deemed guilty of a felony and be punished by imprisonment in the penitentiary not exceeding two years and not less than one year. Provided, that the phrase 'second offense' shall mean a conviction of any offense prohibited by this Act or of the crime of bootlegging as defined in § 10,144 of the Revised Codes of the State of North Dakota for the year 1913, and a subsequent conviction of violating any provision of this Act, whether for the first time or not." Laws 1923, chap. 268, § 4.

Did the lawmakers intend to change this law by chapter 126, Laws 1927, in cases of a second or successive offense, where the offender previously had been convicted of two or more felonies? Did they, clearly and beyond all reasonable doubt, express it to be their purpose and intent that a second or successive offense of engaging in the liquor traffic shall be, and is, a crime involving moral turpitude?

In the prevailing opinion it is said:—"Moral turpitude implies something immoral in itself regardless of the fact whether it is punishable by law. The doing of the act itself and not its prohibition by law fixes the moral turpitude." And again: "When the legislature excepted from the operation of the act 'offenses made felonies by statute not involving moral turpitude' it must have intended that the character of the offense and not the penalty imposed for its commission should determine its turpitude." I am not prepared to disagree with the propositions thus stated. On the contrary, I am inclined to agree that when the lawmakers said that the habitual criminal act should "not apply to offenses made felonies by statute not involving moral turpitude," they had in mind the character of the act involved in the offense; and that it was their intention to except from the operation of the act all offenses made felonies by statute, where the act, although prohibited by law and subjecting the offender to punishment as for a felony, was, nevertheless, not of such character that it could be said to involve moral turpitude. And it seems to me that if this was the intent and purpose of the lawmakers, the same, if given effect, will lead to exactly the opposite conclusion from that reached by the majority members. It is true, as said in the prevailing opinion, the liquor traffic has always been prohibited by the laws of this state. The constitution made it unlawful to manufacture for sale or gift, or to import for sale or gift, or keep or sell or offer for sale or gift, barter or trade, as a beverage, any intoxicating liquor. N. D. Const. § 217. And yet prior to 1917 there was no provision in the laws of this state restricting the importation of intoxicating liquor by any individual for his own personal use or making it unlawful for a person to possess liquor so imported for such use. In fact, the laws expressly recognized the right of an individual to possess reasonable quantities of intoxicating liquors and made only the possession of unusual quantities of intoxicating liquors presumptive evidence that such liquor had been imported for illegal purposes. Comp. Laws

1913, § 10,115. And it is rather significant that the very statute under which the defendant here was convicted recognizes that an individual may, in certain circumstances, lawfully possess intoxicating liquors for his own use. The act provides:

"It shall not be unlawful to possess liquor acquired prior to February 1st, 1920, in one's private dwelling while the same is occupied and used by him as his dwelling only, provided such liquors are for use only for the personal consumption of the owner thereof and his family residing in such dwelling; and the burden of proof shall be upon the possessor in any action concerning the same to prove that such liquor was lawfully acquired, possessed and used." Laws 1923, chap. 268, § 2H.

The National Prohibition Act provides that "it shall not be unlawful to possess liquors in one's private dwelling while the same is occupied and used by him as his dwelling only and such liquor need not be reported, provided such liquors are for use only for the personal consumption of the owner thereof and his family residing in such dwelling and of his bona fide guests when entertained by him therein." 41 Stat. at L. p. 317, chap. 85, title 2, § 33 (U. S. C. title 27, § 50).

If it were not for the specific provision of chapter 268, Laws 1923, would anyone contend that a person would commit any greater wrong or be guilty of any greater moral dereliction because he possessed intoxicating liquors acquired on February 1, 1920, than if he possessed such liquors acquired prior to that date? Yet, under the specific language of said chapter 268, possession of intoxicating liquors under the same identical circumstances are lawful provided such liquors were acquired prior to February 1, 1920, and unlawful if acquired subsequent to that time. Is it not clear that it is not the character of the act but the prohibition of the statute that marks the essential distinction between the two?

During the years the liquor traffic was inhibited by the laws of this state, and yet lawful in the nation at large, were the persons who resided elsewhere (for instance, at the seat of the Federal government) and committed acts, involving intoxicating liquors, lawful where committed, but which would have been unlawful if committed in this state, guilty of acts involving moral turpitude? And at this time are persons who reside in other countries where the possession of intoxicating liquors is lawful, guilty of acts involving moral turpitude when they

retain in their possession intoxicating liquors for their own use? In short, is it not apparent that whatever offense against morals may be committed by a person in this state who possesses say one pint of malt or vinous beverage containing more than one-half per cent of alcohol, inheres not in the character of the act itself but in the fact that such act is prohibited by law?

It will be noted that under the terms of said chapter 268, supra, it is not the number of offenses actually committed against the prohibitory laws which determines the measure of punishment under the act, but the number of convictions. A person who is convicted for the first time can be sentenced only for a misdemeanor even though the evidence shows that he has been engaged in the liquor traffic for a long period of time and has committed tens of thousands of acts, each one a violation of the prohibitory laws. Where a person is charged with a second offense the former conviction is not a part or ingredient of the offense charged but is a matter which pertains only to additional punishment. State v. Rozum, 8 N. D. 548, 80 N. W. 477; State v. Markuson, 7 N. D. 155, 73 N. W. 87; State v. Bloomdale, 21 N. D. 77, 79, 128 N. W. 682; State v. Webb, 36 N. D. 235, 162 N. W. 358. In short, under the prohibitory laws of this state it was not and is not the character of the act committed which subjects the offender to the added punishment but the fact that he formerly has been convicted of violating the prohibitory law; for, as said, a person charged with a first offense can be sentenced only as for the commission of a misdemeanor without regard to the character of the act, and even though the evidence shows him to be a most flagrant violator of the law; whereas, one charged with a second offense will be subject to punishment by imprisonment in the penitentiary even though the evidence should indisputably show that in all his life he had committed but two violations of the law and both under circumstances that were more or less extenuating.

At the time chapter 126, Laws 1927 was enacted there were no other crimes known to the laws of this state except that of violating the prohibitory laws and petit larceny (Comp. Laws 1913, § 10,342) where a former conviction of a particular offense transformed the punishment to be imposed upon the offender from that for a misdemeanor to one for a felony. And it may be observed that there is a striking difference between the character of the acts involved in the two offenses. The op-

probriousness of the act involved in the commission of larceny is not dependent upon the fact that stealing is prohibited by the statutes of this state. The Commandment, "Thou shalt not steal," was given to mankind by a higher authority than human lawmakers; and the term "thief" has throughout the ages been an opprobrious one in every civilized country. Not so, however, with the possession of intoxicating liquors. True, it is wrongful and unlawful to possess them in this state, in the circumstances inhibited by the statute, because such possession is violative of the law; but surely it cannot be seriously contended that every person in the world who possesses intoxicating liquors, where such possession is lawful, is guilty of an act involving moral turpitude. But I am aware of no civilized country in which the term "thief" is not deemed one of opprobrium and where stealing is not deemed to be an act of baseness or depravity.

It will be noted that the statute under which the defendant was charged and convicted in this case contains a specific provision fixing both the minimum and the maximum punishment to be imposed for a second or a successive conviction thereunder. In short, chapter 268, Laws 1923, contains a provision for the punishment of habitual offenders against the prohibitory laws, and in this respect this statute (and other laws of this state relating to the prohibition of the liquor traffic) differs from all other statutes defining criminal offenses. Chapter 268, Laws 1923, relates to only one specific subject, namely, the liquor traffic. It is not merely a statute defining or creating a crime. It is much more comprehensive; and, as said, among other things provides for additional punishments to be imposed upon persons who shall habitually offend against the prohibitory laws. Its provisions in this regard are explicit both as to the minimum and the maximum punishment that may be inflicted upon any person for a second or successive conviction. Did the legislature intend that chapter 126, Laws 1927 should repeal or amend the provision in chapter 268, Laws 1923, that "any person who shall, within this state, commit the crime of engaging in the liquor traffic . . . for the second and every successive offense, shall be deemed guilty of a felony and shall be punished by imprisonment in the penitentiary not exceeding two years?" While this question is not considered by the majority members the obvious result of their conclusions is that they must be of the opinion that the above quoted provi-

sion has been repealed (or amended) by implication as regards cases where the offender previously has been convicted of two or more felonies. According to the reasoning of the majority members, a person who has been convicted of three or more felonies may (and according to the views of the trial judge must) be sentenced to life imprisonment. Laws 1927, chap. 126, § 2.

It is a fundamental rule of statutory construction that repeals by implication are not to be favored, and will not be indulged unless it is manifest that the legislature so intended. 26 Am. & Eng. Enc. Law, p. 721. The presumption is that laws are passed by the lawmakers with knowledge of those already existing and that if they intend to repeal an existing statute they will so declare in specific words. 1 Lewis's Sutherland, Stat. Constr. p. 512. In order that an implied repeal may result the repugnancy appearing in the two statutes must be wholly irreconcilable; such repugnancy must be clear and convincing and follow necessarily from the language used. 26 Am. & Eng. Enc. Law, 2d ed. pp. 725–726. "An implied repeal on the ground of repugnancy will not result in any case unless both the object and the subject of the statutes are the same; and if their objects are different both statutes will stand." 26 Am. & Eng. Enc. Law, 2d ed. p. 727. In cases of doubt considerations of what is just and reasonable are potent factors against repeal by implication. 1 Lewis's Sutherland, Stat. Constr. p. 512.

According to the construction which the majority members place upon chapter 126, Laws 1927, it was intended to operate, and does operate, as an amendment or a repeal of the provisions of chapter 268, Laws 1923, prescribing the punishment to be imposed for a second or successive conviction of violating the prohibitory laws. As a result of the construction of the majority members it follows that if two persons are brought before a district court charged with violating the state prohibitory laws and it is shown that the one has been convicted a dozen times of the most heinous of offenses and is further shown to have violated the state prohibitory laws a thousand times, yet, if it appears that he has never before been convicted of violating the state prohibitory laws, then he may be sentenced only to imprisonment in the county jail for a few months and to pay a fine; but if it be shown that the other person has been convicted once before of violating the state prohibitory laws, and it is further shown that he has been convicted of

three felonies, then he may be sentenced to life imprisonment even though it appears without contradiction that he is a far less dangerous criminal and has, as a matter of fact, never violated the state prohibitory law as flagrantly as the first one. Not only is the suggested result possible as between a person convicted for the first, and a person convicted for a second, offense against the prohibitory laws; but results even more extreme may follow. It is possible that two persons may possess intoxicating liquors of the same kind and quantity and in the same circumstances, except as to the date of acquisition; and if one obtained possession before February 1, 1920 and the other on or subsequent to that date, the former would have committed no offense but the second would be guilty of violating chapter 268, Laws 1923. Hence, if chapter 126, Laws 1927 is applicable to convictions for a violation of said chapter 268, then if the persons alluded to had formerly been convicted of three or more felonies, the person who acquired the liquor before February 1, 1920, would be guilty of no offense at all whereas the person who acquired it after that date might be sentenced to the penitentiary for life. Is it reasonable to suppose that the legislature deliberately and intentionally made the distinction between a lawful act and a crime, subjecting the offender to imprisonment for life, depend, not upon the nature or character of the particular act, but solely upon whether the act was committed on January 31, or on February 1, 1920? Surely it should not be assumed that the lawmakers intended to provide for any such unreasonable or unjust results unless they have stated their intention to that effect in terms free from all doubt.

The lawmakers who enacted chapter 126, Laws 1927, were not dealing with the liquor traffic. They were dealing with, and had in mind, a different subject. They knew that there was then in force specific and comprehensive laws relating to the liquor traffic, and to that alone; that these laws provided different penalties for the first and for the second or successive conviction; that they purported to be, and were, complete in themselves and fixed the maximum and minimum punishments that might be inflicted for any number of successive convictions for a violation of the prohibitory laws. There was no attempt made in the 1927 legislative session to enact any legislation in this state prescribing more severe penalties for violation of the prohibitory laws than those then in force. On the contrary, the records of the legislative

assembly bear evidence that whatever legislation was proposed relating to prohibition was of a somewhat contrary nature. In fact, the legislative records bear ample evidence that some of the members who supported chapter 126, Laws 1927, introduced and sought to have enacted legislation repealing all the statutes of this state prohibiting the liquor traffic (House Journal, p. 218); and it is a matter of common knowledge that after this proposed legislation had been defeated a large number of the members of the legislature who supported chapter 126, Laws 1927, initiated a movement looking toward the repeal of the prohibitory provision in the state constitution; they became members of the "committee for the petitioners" and were so denominated in the initiative petitions filed with the secretary of state asking for a repeal of the prohibitory provision in the state constitution, which proposed measure was submitted to the people at the general election in 1928. See Laws 1929, p. 403.

It is conceded in the prevailing opinion that the authorities are in conflict as to whether a violation of a statute prohibiting liquor traffic is an offense involving moral turpitude. In view of this conceded conflict, and the condition of the laws of this state relating to intoxicating liquors in existence at the time of the enactment of chapter 126, Laws 1927, can it be said that the North Dakota lawmakers have declared it to be their intent beyond any reasonable doubt, that a violation of the prohibitory laws for a second or a successive offense shall be, and is, a crime involving moral turpitude? It seems to me that the majority opinions themselves bear most convincing evidence that there is at least grave doubt on that score; and, if such doubt exists it must be resolved in favor of the defendant and chapter 126, Laws 1927, held inapplicable to convictions for violations of the prohibitory laws.

As I construe chapter 126, Laws 1927, it does not evidence a legislative intention that it shall be applicable to convictions for violations of the state prohibitory laws; and a person convicted of a second or successive violation of chapter 268, Laws 1923, is still subject to the punishment prescribed in that act and to such punishment alone.

I agree with that part of the prevailing opinion which holds that chapter 126, Laws 1927, does not make it mandatory for the trial court to impose upon a person to be sentenced thereunder the maximum punishment prescribed therein; but that such statute evidences a legis-

lative intention to fix merely the maximum punishment and vests in the trial court the power, and imposes upon him the corresponding duty, to determine what punishment shall be imposed in each case, not exceeding the maximum fixed by the law.